## Jeff Chaison Townsite Company v. McFaddin, Wiess & Kyle Land Company.

### Decided June 28, 1909.

**1.—Injunction—Appeal.**

The statute gives no right to an appeal from an order refusing to dissolve an injunction once granted; but an appeal may be taken from the original order granting the injunction notwithstanding the defendant has filed his motion to dissolve and the court has denied said motion.

**2.—Same.**

In an appeal from the naked order of the judge granting an injunction upon the allegations of the petition alone, pleadings of the parties filed after the order was made, will not be considered.

**3.—Same.**

The right of a court of equity generally to issue a mandatory injunction before hearing and without notice, in a proper case, is as unquestioned as the right to issue a merely prohibitive injunction, the only limitation upon such power being that the complainant must show a strong and mischievous case of pressing necessity.

**4.—Same—Possession of Land—Trespass.**

It is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of the title; but if defendant's possession was acquired by a forcible and violent invasion of the plaintiff's previous possession, a preliminary injunction will lie to restore and maintain the status as it existed before the trespass.

**5.—Same.**

Where the plaintiff constructed its irrigating canal across a parcel of land with the knowledge and acquiescence, if not the consent of the then owners of the land, and had used the same for the purpose of supplying many farms beyond with water necessary to raise crops of rice for three years, when defendant, having

acquired the land took forcible possession of the canal, cut its banks and filled its channel, and fenced the land, denying to plaintiff entry, and it appeared that the defendant knew of the acts of plaintiff and made no objection, and that its acts would involve the plaintiff in many lawsuits on contracts to supply water, and that many of the farmers relying upon plaintiff to supply their farms would suffer great loss of crops if water was not supplied at once, the plaintiff was entitled to a preliminary injunction having the effect to restore and maintain the status of the property as it existed before defendant's trespass until final hearing or further order made in the cause.

**6.—Same.**

The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing a preliminary injunction. Such a doubt may relate either to the facts or to the law of the case or both, and in this connection damage to others, not parties to the suit, may be considered.

Appeal from the District Court of Jefferson County.   Tried below before Hon. W. H. Pope.

*Watts & Wheat* and *Dougherty, Conley & Gordon,* for appellants.— The court erred in granting said writ of injunction because the same was issued ex parte and without notice to defendants and had the force and effect of turning defendants out of the possession of said five acres of land, and putting plaintiffs in possession of the same, before final decree determining and settling the rights of the respective parties to the said land.  22 Cyc., p. 743; Toledo, A. A. & N. M. Ry. Co. v. Detroit, L. & N. Ry. Co., 27 N. W., 715; Fresno Irrigation Co. v. McKenzie, 65 Pac., 473; Calvert v. State, 52 N. W. Rep., 687; State on Relation of Reynolds v. Graves, 92 N. W., 144; Arnold v. Bright, 2 N. W., 17.

The court erred in granting said writ of injunction because by the allegations in plaintiff's petition it is made to appear that defendants are the true and lawful owners of five acres of land described therein, and that the plaintiffs are naked trespassers without any right of any kind or character whatsoever.   Texas & P. Ry. Co. v. Durrett, 57 Texas, 48; Toyaho Creek Ir. Co. v. Hutchins, 21 Texas Civ. App., 274; Parsons v. Hunt, 98 Texas, 420.

*F. J. & R. C. Duff* and *McDowell & Davidson,* for appellees.

REESE, ASSOCIATE JUSTICE.—This is an appeal from an order, in chambers, of the judge of the Fifty-eighth Judicial District, granting an injunction against appellants at the suit of appellees.   The petition was filed May 14, 1909, upon which the injunction prayed for was on the same day granted without notice.   On May 17th defendants filed their answer under oath, upon which they predicated a motion to dissolve the injunction.   Thereupon plaintiffs, on May 25th, filed their first supplemental and first amended petitions.   The motion to dissolve coming on to be heard, on May 27th, was overruled.   This action would appear to have been had by the court, in session, from the terms of the order.   From this order notice of appeal was given to this court.   This appeal, however, is prosecuted, not from this order of the court refusing to dissolve the injunction, but from the original order.

granting the same, and the contention is made, *in limine,* by appellees that appellants, by filing their motion to dissolve in the District Court, have lost their right to appeal from the original order granting the injunction.

The statute gives no right to an appeal from an order refusing to dissolve an injunction once granted, which is a serious defect in the law, and is probably due to an unintentional oversight. We are inclined to the latter view by a consideration of the various defects, in the Act in question, which bears the marks of crudeness. Unquestionably it is, or should be, the policy of the law to encourage parties litigant to seek to have errors corrected, so far as this may be done, in the cheapest and most expeditious way, and in view of this, we do not think it was the purpose of the statute to penalize a litigant, by depriving him of the remedy of appeal to this court from an order granting an injunction, if he should seek, at the source of the injunction, to have the supposed error corrected by a dissolution. It would have been better if the Act in question had, in fact, given the right of appeal from an order refusing to dissolve, instead of from the order granting the injunction, which would have allowed a presentation of the case on appeal upon the petition, answer and such evidence in addition. as was heard on the motion to dissolve, instead of the naked allegations of the petition. We overrule appellee's contention as to the effect of the motion to dissolve, on this appeal, which has been perfected within fifteen days of the date of the granting of the injunction.

Appellees have had sent up their supplemental and first amended petition in which the grounds for injunction are more fully and clearly stated, and we find in the record also an answer of appellants, with their motion to dissolve, and the order refusing the same.

In an appeal from the naked order of the judge granting an injunction upon the allegations of the petition alone, we doubt whether the pleadings referred to, filed some days afterwards, can be properly considered over the objection of appellant, and we therefore have not considered them. This applies as well to the answer of appellants as to the other pleadings of appellees.

The allegations of the petition. upon which the injunction was granted are as follows:

"Plaintiff shows unto the court that on or about the —— day of February, 1906, it constructed a lateral canal from its main canal upon and across a portion of the Pelham Humphries and J. Douthitt surveys, for the purpose of furnishing water to different parties, and among others, to parties cultivating lands upon the Grange survey; that at the time of constructing its canals the plaintiff contracted and agreed with C. J. Chaison, who represented the American Oil & Refining Company, in consideration of the American Oil & Refining Company granting unto it a right of way for its canals over the lands of said American Oil & Refining Company, that it would water the lands of American Oil & Refining Company at the prices to be charged other people for the same service; that at the time of construction the lateral hereinbefore referred to, which crosses a portion of the said Pelham Humphries survey, plaintiff had no knowledge of any objection thereto by any person owning the same or having an interest therein, believing

that if the same belonged to the said American Oil & Refining Company, the stock of which was owned very largely by the defendant C. J. Chaison and his family, or if it belonged to the defendant, the Jeff Chaison Townsite Company, of which the said C. J. Chaison was president, and the said lateral being constructed in a large measure to furnish water to tenants of the said American Oil & Refining Company, on the said Grange survey, that there could be no objection thereto; and as a matter of fact there had been no objection thereto or complaint made of the situation of said lateral until now. That at the time of the construction of said canal it was so constructed, laid out and built on and across five acres of the Pelham Humphries survey situated west of the Sabine & East Texas Railroad and south of J. Douthitt survey, fronting the public road, which said five acres at that time was owned by the Favorite Oil Company, and which said Favorite Oil Company had made no objection to the construction of the said canal; that after the construction of said canal at the June term, 1907, of the Sixtieth Judicial District Court, the Jeff Chaison Townsite Company recovered ten acres of the Pelham Humphries survey from the said Favorite Oil Company, which said ten acres includes the five acres across which the said lateral was so constructed and is now situate.

"Plaintiff shows unto the court that said lateral was not constructed and run across said land with the intention or purpose of injuring any one, and especially not any of the defendants herein, but solely for the purpose of conveying water for the purposes of irrigation to different farmers, and especially those upon the Grange survey for the purpose of irrigating rice grown upon the lands of the said different parties as herein alleged. It is further shown the court that the plaintiff had contracted and agreed to furnish water for irrigation for 300 acres of land now planted in rice upon the Grange survey for tenants of the said American Oil & Refining Company, of which C. J. Chaison, one of the defendants, is president, and also for 500 acres for Baird Brothers, 100 acres for Winsor & Head, and 200 acres for Winsor & Head, which is also on the American Oil & Refining Company's property, and 100 acres for Huffman on the property of the said American Oil & Refining Company.

"It is further shown to the court that unless it is permitted to use its canal as now constructed it will be impossible to furnish the said farmers water as it has agreed to do, and they will thereby be unable to make a crop and suffer irreparable damage, and that this plaintiff will suffer the loss of its rental for water agreed to be so furnished said different rice farmers, and subject this plaintiff to numerous damage suits. Plaintiff shows that the said defendant, C. J. Chaison, acting for himself and for the said Jeff Chaison Townsite Company, did on or about the 12th day of May, 1909, go upon the said five acres of land hereinbefore described, the title to which came into the said Jeff Chaison Townsite Company at the June term, 1907, of the District Court of this county, and long after the construction of the said lateral, and did dam up the said lateral and cut same so as to let the water out of it, and fenced the same up so that the plaintiff could not use the said canal for the purpose of furnishing water to the rice farmers hereinbefore mentioned and with whom he had agreed to furnish water;

and at the same time did employ his co-defendants, O. S. McCullough and John Baldwin, and put them in charge of the said five acres of land of the said lateral canal across same, so dammed and fenced up as aforesaid, for the purpose of keeping plaintiff and its agents and employes from going upon the same or interfering therewith, or to place same in a condition to convey water along the same or to remove the dam therefrom or to in any way interfere with the possession of the said Townsite Company or the said C. J. Chaison; that by said acts of the said Chaison, acting for himself and said Townsite Company, this plaintiff has been entirely cut off and prohibited from furnishing water for irrigation purposes to the said farmers hereinbefore referred to, and to any others that may be along the said lateral canal, and has thus rendered it impossible for the said rice farmers so mentioned to get water to irrigate their said rice crops for this entire year, unless this court shall grant the relief hereinafter prayed for.

"Plaintiff shows further unto the court that the rice crops of the said farmers hereinbefore mentioned have all been planted, and that they are now calling upon this plaintiff for water, and that this plaintiff is now ready, able and willing to furnish said water if it can have the use and advantage of its said canal constructed as heretofore shown; it is further shown the court that the said farmers hereinbefore referred to prepared and planted their lands with a view to getting the water from this plaintiff and through the said lateral as now constructed, and which has been so constructed since 1906, and this plaintiff agreed to furnish them with the water because of the fact that it had for three years past been allowed to furnish water through said lateral unmolested in any way whatever, believing at the time of the construction of the same, and at all times since, that it had a right to so construct its canal, and that there was no objection thereto, and being confirmed in its belief by a continued acquiescence by the owners of said land for more than three years

"It is further shown the court that the said five acres of land, two acres of which is so fenced up by the defendants herein and across which said lateral runs, is not planted to anything, nor is the same in cultivation, and the said canal or lateral across same does not damage the same to any appreciable extent, but is a positive and direct benefit to all of the parties hereinbefore mentioned as a means of procuring water for the purpose of irrigating their rice, as well as to all other persons along said lateral who need water for irrigating purposes. It is further shown the court that this plaintiff is amply solvent and able to pay any damage it may cause defendants, or either of them, by virtue of the said laterals crossing the said five acres of land, and that if any damage shall be caused by said lateral, then this plaintiff can be made to respond in damages for whatever loss or diminution in value the said five acres shall sustain by reason of said lateral, but it is shown the court that unless said lateral is opened up and this plaintiff allowed to furnish water for the purposes of irrigation, that the farmers hereinbefore mentioned will be denied the power and privilege of watering their lands at all, and thus be cut off from making a crop during this year, and that the said lands amount to between 800 and 1,000 acres.

TEXAS CIVIL APPEALS REPORTS, VOL. 56. [*June,*

"It is further shown that the said parties above mentioned are now asking and demanding from this plaintiff that it furnish water to them upon their farms, and it is anxious and ready, and would furnish said water as now desired by said farmers, except for the fact that the said defendants have cut his said lateral and dammed the same up and fenced the same, so that plaintiff can not flow its water along said canal nor have access to same nor go upon the ground for the purpose of fixing said canal and furnishing said water. It is further shown the court that it would be inequitable and unjust to cause this plaintiff and its patrons, the said rice farmers as aforesaid, to suffer the irreparable damage herein set out because of the acts of the defendants in stopping up said ditch because it crosses five acres of its land, and for which damage to said five acres, if any, the defendants have a complete and adequate remedy at law by suit against this plaintiff, who is amply solvent, to respond in whatever damages it has or may have caused, or may hereafter cause the said defendants or either of them. It is further shown the court that growing of rice requires a great deal of water, and in order that it be successfully grown must be watered at the very time it is needed, and it is shown that the water is now needed and demanded by the rice farmers hereinbefore referred to for the purpose of watering their crops."

Upon these allegations appellees prayed for an injunction restraining appellants, their agents and servants, from further interfering with the appellee's possession of said lateral canal, and commanding them to remove all obstructions placed by them in and upon said canal, including the fence, and further giving appellees the power to remove such obstructions and to fill up the gap cut by appellants in the banks of the canal, and prohibiting appellants from interfering with their so doing. The injunction was granted in the terms of the prayer.

Under the third and fifth assignments of error appellants present the following proposition:

"A mandatory writ of injunction should never issue without notice, and where the effect of a mandatory writ of injunction is to grant to the complainant all the relief that he could obtain on a final hearing, and where such writ is issued without a hearing and without notice, it is taking property without due process of law and contravenes section 19, article 1 of the Constitution of the State of Texas, and section 1 of the Fourteenth Amendment to the Constitution of the United States, and is therefore void."

These assignments of error, as is shown by the proposition, are leveled only at the mandatory provisions of the writ of injunction. Many of the restrictions upon the use of mandatory injunctions have, in modern times, given way to a more liberal construction of the powers of a court in equity in the use of such form of injunctions. In Joyce on Injunctions, with reference to such injunctions, it is said:

"In support of the modern view before noticed, that a mandatory remedial injunction should be granted in a proper case as readily as in a preventive one; and as a further illustration of the plasticity of the injunctive process, when required to be used in a new and unfamiliar environment, the Supreme Court of Oklahoma has held that on proceedings by a homestead claimant to enjoin one claiming ad-

versely to him from interfering with his possession, the court may, on defendant's answer and cross complaint, enjoin plaintiff from interfering with defendant's possession; and that in such case the court may give its mandatory injunction the force and effect of a writ of possession, as there is no adequate remedy at law, and as defendant should not be compelled to wait for possession pending the settlement of title in the land department. Mandatory injunctions which require of a party the performance of some act always, to some extent, anticipate the judgment of the court, and therefore should be granted with caution and only when the necessity is great. But not only is the power to grant them undoubted, but the remedial and restraining power of a court of equity would be greatly impaired if such was not the rule." (2 Joyce on Inj., sec. 1392; 1 Joyce on Inj., 101-103; 1 High on Inj., sec. 2; 6 Pom., Ed. Juris., secs. 554-5-6; 5 Pom. Ed., sec. 510; Pokegama Lumber Co. v. Klamath Lumber Co., 86 Fed. Rep., 528-533; New Iberia Rice Milling Co. v. Romero, 29 So., 876; State v. Ritz, 9 L. R. A. (N. S.), 1228.)

Investigation of the foregoing authorities will show that the right of a court of equity generally to issue a mandatory injunction before hearing and without notice, in a proper case, is as unquestioned as the right to issue a merely prohibitive injunction, the only limitation upon such power being, as sometimes stated, that the complainant must show "a strong and mischievous case of pressing necessity." The result of an indiscriminate refusal of such right and power in the court would be that, in case of trespass to the irreparable injury of complainant, clearly entitling him to a restraining writ, he would be remediless if the trespasser by superior diligence succeeded in installing himself upon the premises before the sheriff could reach him with the prohibitive writ. This is not the kind of diligence that will be rewarded or protected by a court of equity. It will not do to look alone to the fact that the defendant is in possession without regard to how he acquired such possession.

As to the objection that the writ issued without notice grants to complainant all the relief he could obtain on a final hearing, the prayer of plaintiff's petition and the terms of the judge's order are subject to this criticism. No reference is made in the prayer, nor in the judge's order, to any future proceedings in the case; but, as the result either of inadvertence or design, the injunction prayed for and granted is in terms permanent and perpetual. The writ of injunction issued is, however, not subject to this criticism, but is only in form a temporary injunction until the hearing.

The order of the court will be reformed so as to operate as a temporary injunction merely, disposing of none of the questions, but only preserving the status of the property until further order made in the case in the trial court, and this, we think, will remove the objection of appellants last referred to. The third and fifth assignments referred to are overruled.

Under the fourth assignment of error appellants advance the proposition that it is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of the title. This doctrine, as generally stated in the propo-

sition, is correct, and is supported by the authorities cited in appellants' brief. (Toledo, A. A. & N. M. Ry. Co. v. Detroit, L. & N. Ry. Co., 27 N. W., 715; Calvert v. The State, 52 N. W., 687; Reynolds v. Graves, 92 N. W., 144; Arnold v. Bright, 2 N. W., 17.) But, in our opinion, the doctrine of these cases has no application to the case here presented. In Railway Company v. Railway Company, *supra,* one railway company secured an injunction, without hearing and in advance of a trial, to restrain another railway company from interfering with the complaining company in laying its track across the right of way and tracks of defendant company. The defendant company was, and had been, in quiet and peaceable possession of its track and roadbed. The effect of the injunction was to transfer permanently, without a trial, to a qualified extent, this possession to the complainant. Calvert v. The State, *supra,* was a similar case. A street railway company securing an injunction, without a hearing, restraining a railway company from interfering to prevent the street railway company from laying its track across the track of the railway company. The following extract from the opinion fully explains the case, and emphasizes the distinction between that and similar cases, and the case here presented:

"The sum of the answer of the Chicago, Burlington & Quincy Railroad is that for over twenty years it had been in possession of this property; that it was within the limits of its yard at Lincoln, and necessary for the transaction of its business; that the plaintiff's railway was not a lawful corporation, and had no right to use the property in question for its track; that the location and use of said street railway would cause great injury and danger to the company and its employes; that the plaintiff had paid nothing for the right to use said streets, etc. These facts stand admitted, yet the plaintiff was given full authority to proceed and construct the street railway, while the defendant was enjoined from defending its possession."

In State v. Reynolds, *supra,* defendant was in possession of land under a lease, and had planted crops, which were then growing on the premises. Plaintiffs claimed that the lease was void. The effect of the injunction granted, in advance of the trial, was to transfer the possession of the land and crops growing thereon to plaintiff. The court says: "Phillips was, it is true, claiming the land, but he did not occupy it; and the injunctions were, therefore, not granted for the purpose of preventing a threatened invasion of a present actual possession." Now it is true that appellants were in possession, but such possession was acquired by a forcible and violent invasion of appellees' previous possession, and the effect of the injunction was to restore and maintain the status as it existed before this trespass.

Arnold v. Bright, *supra.* is a very similar case to the preceding one. A tenant in peaceable possession, who had planted crops which were growing on the land, was by a preliminary injunction, in advance of a trial, turned out of possession, and the land and growing crops turned over absolutely to the plaintiff. The court says: "The most striking feature of this case is, that on the filing of the bill, by an ex parte order, the court adjudged the whole merits of the controversy by means of an injunction, turned the defendants out of possession of premises of which they were *prima facie* lawful occupants, under complainants'

lease, and allowed the complainants to have the immediate benefits of a final decree in his favor by entering and occupying."

If the complainants here were seeking by injunction to prevent defendants from interfering with their entry upon the land, and to secure possession of it for the purpose of opening a canal through the same, there would be some analogy between the case thus presented and those cited. But, according to the allegations of the petition, appellees had opened their canal through the five-acre tract with the consent, or at least with the acquiescence of the then owner, had extended the same some distance beyond, and had been in the quiet and undisturbed use and enjoyment of the easement thus acquired for three years when, without their knowledge or consent, appellants took forcible possession of the same, fenced up the land, including that portion of the canal running through it, cut the banks and filled up the canal.

The effect of the injunction, as modified by the court, is only to restore the possession thus forcibly invaded and preserve the status until the question of appellees' right can be determined  The authorities heretofore cited by us, under the third and fifth assignments, support our conclusion that preliminary writ of injunction may issue for this purpose.

The case presented by the petition is one of peculiar hardship. The canal was constructed by appellees in 1906 for the purpose of furnishing water to rice farmers, over a large area. It had been so constructed through the five-acre tract of appellants, who are a corporation, with the actual knowledge of the present officers of such corporation, and with the knowledge and, if not with the actual consent of, without objection from, the then owners of the five-acre tract, and had been extended some distance beyond, at great expense. Appellees had been in the quiet and undisturbed possession of the easement thus acquired for three years. A number of rice farmers had planted their lands in rice, trusting to this canal for their supply of water, without which such crops can not be raised. Appellees had made contracts with such rice farmers to supply them with water for the present crops. All this had been done without a whisper of objection from appellants, who were bound to know what had been and was being done. In May, 1909, at a time the most critical in the making of a rice crop, and when a delay of a few days in procuring the necessary water would entirely destroy the crop, appellants suddenly, and without the knowledge of appellees, took forcible possession of that portion of the canal running through their five-acre tract, cut the banks, filled up the canal, and fenced up the land. The consequences in the loss of rice crops, and the plentiful crop of law suits against appellees for failure to carry out their present contracts for water are inevitable. The damages to appellants from the granting of the temporary injunction, if wrongfully granted, are trivial, and easily estimated and compensated. We quote from Joyce on Injunctions, vol. 1, sec. 25:

"Where the rights of the parties are at all doubtful the court applied to for an injunction should look at the balance of convenience, and act upon the consideration of the comparative inconvenience which may arise from granting or withholding the injunction. In this connection it is said in a recent case: 'In a doubtful case, where the

granting of the injunction would, on the assumption that the defendant ultimately will prevail, cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant through its refusal, the injunction usually should be denied. But where, in a doubtful case, the denial of the injunction would, on the assumption that the complainant ultimately will prevail, result in greater detriment to him than would, on the contrary assumption, be sustained by the defendant through its allowance, the injunction usually should be granted. The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction. Such a doubt may relate either to the facts or to the law of the case, or to both."

And it has been held in this connection that damage to others, not parties to the suit, may be considered in a doubtful case.

It was stated in argument at the bar by counsel for appellees that appellees only required that appellants be restrained from interfering with their possession, and that the mandatory injunction requiring appellants to remove the obstruction to the canal, fill up the gaps cut, etc., was not needed. It seems to us that a prohibitive injunction enjoining and restraining appellants from in any way interfering with the free use and possession of the canal through the land claimed by them, will afford appellees all the relief required, and the injunction will be so modified, and the order of the judge will also be modified so as to operate only temporarily until further order is made in the trial court in the cause, and as so modified the order will be affirmed at the cost of appellees.

Our conclusion is that the office and effect of the injunction is only to restore and maintain the status of the property, as it existed before appellants' forcible trespass, until the final hearing or until further order made in the cause by the trial court. As to the merits of the controversy to be adjudicated on the final hearing, involving the right of appellees to continue in the use and operation of the canal through appellants' land, that question is entirely open, and is not in any way affected by our decision of the questions presented on this appeal.

The order for the injunction will be reformed, as herein indicated, and as so reformed will be affirmed, but appellees should pay the costs of the appeal, and it is so ordered.

*Reformed and affirmed.*