HOUK et al. v. ROBINSON et al.

(Court of Civil Appeals of Texas. San Antonio. Oct. 22, 1913.)

1. WATERS AND WATER COURSES (§ 156*)—IRRIGATION DITCHES — ENJOINING INTERFERENCE.

Where land was conveyed by a water company to the common grantor of plaintiffs and defendants by a deed which provided that water would be delivered by the company for irrigation purposes to a point on a lateral, at which point the company would put in a water gate, that the purchaser would construct and keep in repair the lead ditches and all distributing ditches, that, if it should be necessary or proper to use one lead ditch to furnish water to more than one person, all such water takers might take water through such ditch, but each should contribute equitably and justly to the expense thereof, that the company's engineer should determine the necessity and propriety of such common ditch, and that rights of way on and across the land for the furnishing of water to other persons were retained by the company, defendants, who purchased their land after a ditch used to furnish water to plaintiffs and others, the necessity for which had been determined by the engineer, had been constructed thereover, held their title burdened with the rights retained by the company for itself and the other water users, and subject to the right of way reserved, and might be enjoined from interfering with plaintiffs' right to have such ditch kept open.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 158, 174–183; Dec. Dig. § 156.*]

2. WATERS AND WATER COURSES (§ 156*)—IRRIGATION—RIGHTS OF WAY.

Where land was conveyed by a water company by a deed which provided that the purchaser should construct and maintain the lead ditches for irrigation purposes, that, if it should be necessary or proper to use one lead ditch to furnish water to more than one person, all such water takers might take water through the ditch, but that each should contribute equitably and justly to the expense thereof, and that rights of way for ditches were retained by the company for itself and other water users, and the company's engineer determined that it was necessary and proper to use one lead ditch for the service of several owners, which ditch was accordingly constructed, maintained, and used, one of such owners had a right to go upon the land of another owner, across which the ditch was constructed, for the purpose of maintaining and repairing it, and the owner of the land upon which was the ditch could therefore be enjoined from interfering with such repair.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 158, 174–183; Dec. Dig. § 156.*]

3. WATERS AND WATER COURSES (§ 158½*)—IRRIGATION DITCHES—ENJOINING INTERFERENCE.

In a suit to enjoin interference with an irrigation ditch across defendants' lands and interference with plaintiffs' right to maintain and repair such ditch, where the ditch was already in existence and was sufficiently described in the petition and exhibits to enable the proper location thereof, it was not necessary to describe it by metes and bounds.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 189; Dec. Dig. § 158½.*]

4. INJUNCTION (§ 143*) — PRELIMINARY INJUNCTION—NOTICE OF APPLICATION.

Under Rev. Civ. St. 1911, art. 4651, providing that upon application for a writ of injunction, if it appear to the judge that delay will not prove injurious to either party and that justice may be subserved thereby, he may cause notice of such application to be served upon the opposite party and fix a time and place for the hearing of such application, the matter of notice is within the discretion of the district judge whether the application is for a mandatory or a prohibitory injunction, and hence it was not error to grant without notice an injunction restraining interference with an irrigation ditch or with the restoration thereof by plaintiffs, though the ditch was on defendants' land, where the petition alleged that defendants were not financially responsible, that plaintiffs were preparing their lands for fall crops, that without water for irrigation they would be unable to grow any crops, that the ditch existed before defendants purchased their land and as located took as little of the land as was practical with good service and gave good and sufficient service with the least possible injury, that defendants had prevented plaintiffs from opening up the ditch, after it had been closed by them, by force, and it appeared that before the next term of court plaintiffs would in the natural course of events lose their crops, since the comparative hardship or convenience is to be considered in granting or refusing preliminary injunctions.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 315; Dec. Dig. § 143.*]

5. WATERS AND WATER COURSES (§ 158½*)—IRRIGATION DITCHES—ENJOINING INTERFERENCE.

In a suit to enjoin interference with an irrigation ditch across defendants' land, the water company from which plaintiffs obtained water by means of such ditch, and which, in its conveyance of defendants' land, reserved the right to maintain such ditch, was not a necessary party; it being ready and willing to furnish water.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 189; Dec. Dig. § 158½.*]

6. WATERS AND WATER COURSES (§ 158½*)—IRRIGATION DITCHES—ENJOINING INTERFERENCE.

That a water company which, in conveying certain land, reserved the right to maintain ditches thereover for the benefit of the land owned by plaintiffs, and from which plaintiffs derived water for irrigation purposes, was in the hands of a receiver appointed by a federal court did not affect plaintiffs' right to an injunction restraining interference with the ditch

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

on the part of the owners of the land across which it was constructed.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 189; Dec. Dig. § 158½.*]

Appeal from District Court, Cameron County; Wm. Masterson, Judge.

Action by F. M. Robinson and others against Clyde Houk and others. From a judgment granting a temporary injunction, defendants appeal. Affirmed.

J. M. Mothershead, of San Benito, for appellants. Morrison & Robards, of San Benito, for appellees.

MOURSUND, J. Appellees, during the absence of Judge W. B. Hopkins, judge of the district court of Cameron county, applied to Judge Wm. Masterson, of the Fifty-Fifth district of Texas, for a temporary injunction to require appellants to desist and refrain from interfering with appellees' use of and rights in a certain irrigation ditch in Cameron county, Tex., and from interfering with plaintiffs in exercising their right to conduct and convey water through the said ditch and to have water flow across, along, and over the right of way described in the petition and from interfering with plaintiffs' rights to irrigate their certain lands, or with the irrigation of said lands, and with plaintiffs' right to go on, upon, and along the said right of way, and further to desist and refrain from interfering with the rebuilding of the said ditch and with the maintenance thereof when rebuilt. The injunction was granted upon the petition, no evidence being heard, nor opportunity given for answer, whereupon appellees appealed.

[1] By the first assignment of error it is contended that the petition for injunction is insufficient in that it fails to show that appellants are parties in privity with appellees' water contract with the company. The proposition thereunder is as follows: "The right and duty to furnish appellees water as shown by the allegations in the petition and the water contract devolves upon the company, the water belonging to the sovereignty, and the privilege and duty of furnishing the same belongs to the company, and the appellants are not in privity with said contract, and therefore no right of action lies against these appellants by the appellees to compel appellants to perform the duty or furnish the means for conveying water to appellees."

While it is clear from the petition that it is the right and duty of the company to furnish water, yet they could not get the water as long as appellants kept the ditch across their land closed, and the question for determination was whether the petition showed a right on the part of appellees to have such ditch kept open so that water could run through it, and, if so, whether appellants had invaded that right, and whether such damage was threatened as would entitle appellees to relief by injunction. Considering the petition and plats attached, it is clear that both appellants and appellees deraign title under W. H. Stenger, who held under deeds from the company containing the following clauses: "The considerations for this deed are as follows: First. The payment by said W. H. Stenger for the amount of cash recited in said deeds respectively. Second. The execution by the grantee and delivery to the grantor of certain promissory notes of the grantee [and then follows a description of the purchase money notes forming a part of the consideration]. Third. The covenants, agreements, stipulations, and reservations with reference to said land and with reference to the furnishing of water for the irrigation of said land and payments for such service herein set forth, and the agreements, covenants, and stipulations here made by the grantee and the payments here provided for being parts of the purchase price for said land and running with the land and being binding upon said grantee and all persons claiming by, through, or under him. Among the covenants, stipulations, and reservations above referred to, the following were set out and contained in each of said deeds: 'The water will be delivered by the company to a point on a lateral of the company to be determined by the engineer of the company. The company will put in the water gate at said lateral and the purchaser will construct, maintain, and keep in good repair the lead ditches, levees, and gates and all distributing ditches and other conduits for the proper distribution of water over said land, under the direction of the manager or engineer of the company who shall, as to such matters, be regarded as the agent of the grantor, exclusively. Any failure on the part of the grantee to build or repair any of his levees shall authorize the company to do so at his expense. If it should be necessary or proper to use one lead ditch to furnish water to more than one person, all such water takers may take water through such ditch, but each shall contribute equitably and justly to the expense of constructing and maintaining such ditch; the engineer of the company shall determine the necessity and propriety of having such common ditch and shall determine and adjust the expenses and charges to be respectively paid by the water takers. The water gate shall be under exclusive control of the company, and the grantee shall not open same without the consent of the engineer or manager of the company. Rights of way on and across the land hereby conveyed for necessary ditches and drains for the furnishing of water to other persons and the drainage of land by such persons are retained by the company for itself and such persons. It is understood and agreed that any failure upon the part of the parties hereto

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

to carry out the terms of this contract shall not be grounds for the rescission of same, but that the grantor shall have the rights hereinbefore set out for its protection. Wherever in this conveyance the word "grantor" or the word "company" is used it means the San Benito Land & Water Company, its successors and assigns, and wherever the word "grantee" is used it means the purchaser, his heirs, executors, and assigns.'"

It being alleged that the ditch was upon appellants' land at the time they bought same, and an essential link in their chain of title containing the above provisions, they took the land subject to the same conditions and burdened with the same easements as when Stenger owned it. It was further alleged that the ditch was necessary to furnish water to appellees and others (and that its necessity had been determined by the engineer of the company), so that the lands owned by appellees and others could be irrigated. We conclude that the title held by appellants, according to the allegations made, was burdened with certain rights retained by the company for itself and others who might take water from the company and with reservation of right of way for necessary ditches for the benefit of the company and the persons to whom it furnished water. The suit is not one to compel the company to deliver water but to require appellants not to interfere with appellees' right to have a ditch kept open so the company can deliver the water; such right existing by reason of the conditions and reservations made in the deeds to Stenger, the common grantor of appellants and appellees. The first assignment is overruled.

[2] By the second assignment of error it is contended that the petition fails to aver all the facts necessary to entitle appellees to relief because it fails to allege that appellees have any right to go upon appellants' lands and construct said irrigation ditch, but alleges in paragraph 8 that the company has such right. It is alleged that the ditch in question is a lead ditch, determined upon by the engineer of the company, and established for the purpose of conducting water from a point on a sublateral of the company to irrigate the lands of appellants, appellees, and others, and that said ditch was constructed by the owners of said land and maintained and used by them and the company to convey water for the irrigation of said land. The deeds to Stenger provided that the purchaser was to construct, maintain, and keep in good repair the lead ditches, and, if it should be necessary or proper to use one lead ditch to furnish water to more than one person, all such water takers might take water through such ditch, but each should contribute equitably and justly to the expense of constructing and maintaining such ditch, and that rights of way for necessary ditches were retained by the company for itself and other persons to whom water was

to be furnished. It was further alleged that it appeared necessary to the engineer of the company to use a lead ditch from the water gate "to water the lands in the two tracts first aforesaid" (evidently referring to the tracts respectively owned by appellants, they being first mentioned in stating the ownership of the various parcels into which the Stenger lands were subdivided), and that the engineer thereupon determined that it was necessary and proper to use one lead ditch for the service of the several owners of said land (evidently the Stenger land), and that said lead ditch from said water box was constructed by the then owners of said land (again referring to the Stenger land) and has since been maintained by them and used by them and the company for the purpose of conveying water for the irrigation of the above-described land. We are of the opinion that the allegations show such an interest in the ditch right of way as to entitle any one of the persons whose duty it was to maintain the ditch to go upon and along it for that purpose. It does not appear that the company has any greater rights in this respect than the water takers, but the company is given the express power to go upon the owner's land to build or repair levees if the owner fails to build or repair the same. The assignment is overruled.

[3] There is no merit in the third assignment of error. The ditch to be opened was the one which had already been in existence, and the description in the petition and exhibits was sufficient to enable the proper location thereof. It was not necessary to describe the same by metes and bounds.

The fourth assignment reads: "The court below should not have granted the writ of injunction mandatory in effect upon the petition without evidence and notice to the appellants, because the same transfers the possession of the property of these appellants and in violation of article 1, § 19, Constitution of Texas." The proposition is as follows: "A writ of injunction mandatory in effect and transferring the possession of property should not be granted upon a petition without evidence or (of) notice to the defendants."

[4] Article 4651, Revised Statutes of 1911, reads as follows: "Upon application for any writ of injunction, if it appear to the judge that delay will not prove injurious to either party, and that justice may be subserved thereby, he may cause notice of such application to be served upon the opposite party, his agent or attorney, in such manner as he may direct, and fix a time and place for the hearing of such application." This statute leaves the matter of notice within the discretion of the district judge and makes no distinction between mandatory and prohibitory injunctions. In view of the statute, we do not feel authorized to reverse this case upon the ground that notice was not given

appellants and evidence heard, even though of the opinion that the trial judge might well have pursued such course before granting the injunction. So far as the injunction itself is concerned, it merely directed that appellants refrain from interfering with appellees in the restoration by the latter of the status of the ditch as it existed at the time appellants forcibly took possession thereof and deprived appellees of the rights they had theretofore enjoyed. It was alleged that appellants were not financially responsible; that appellees were preparing their lands for fall crops of truck and feed stuff; that such lands are situated in a section requiring irrigation in order to make crops; that "without water for irrigation they will be unable to grow any crops whatever on said land, and, unless said ditch is rebuilt, forthwith they will be unable to irrigate land and will suffer irreparable injury and great loss."

The deeds to Stenger were made in 1907 and 1908, and, while the date when the ditch was first constructed is not stated, it is alleged that it existed before appellants purchased their lands; that the ditch as located took as little of appellants' land as was practical with good service and gave appellants good and sufficient service with the least possible injury. It was further alleged that by force and arms appellants prevented appellees from opening up the ditch after it had been closed by appellants. It is apparent from the allegations that before the case could be reached for trial, at the term of court beginning November 10, 1913, appellees would, in the natural course of events, lose their crops. On the other hand, the damages to appellants, by reason of having the ditch open until the case is tried, cannot be very great. Joyce in his work on Injunctions, vol. 1, § 25, says: "Where the rights of the parties are at all doubtful, the court applied to for an injunction should look at the balance of convenience and act upon the consideration of the comparative inconvenience which may arise from granting or withholding the injunction. In this connection it is said in a recent case: 'In a doubtful case, where the granting of the injunction would, on the assumption that the defendant ultimately will prevail, cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant, through its refusal, the injunction usually should be denied.' But where, in a doubtful case, the denial of the injunction would, on the assumption that the complainant ultimately will prevail, result in greater detriment to him than would on the contrary assumption be sustained by the defendant through its allowance, the injunction usually should be granted. The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction. Such a doubt may relate either to the facts or to the law of the case, or to both."

In the case of Jeff Chaison Townsite Co. v. McFaddin, Wiess & Kyle L. Co., 56 Tex. Civ. App. 611, 121 S. W. 719, the Court of Civil Appeals for the First District held, in a case very similar to this, that a mandatory temporary injunction was justified. The threatened damage in that case was much greater in extent than in this case, but the right to maintain the ditch across the land appears to have rested upon a much weaker foundation than in this case.

We conclude that the assignment of error is not well taken.

[5] The fifth assignment is overruled. The company was not a necessary party. It was alleged that the company was ready and willing to furnish water, and this was not a suit to compel the delivery of water but to compel the reinstatement of a ditch in order that the water might be delivered through the same.

[6] By the sixth assignment it is contended that it was error to grant the injunction because the petition shows that the San Benito Land & Water Company is in the hands of a receiver appointed by the federal court, and the ditch sought to be opened is designated on the plat attached to the petition as S. B. L. & W. Co. Irrigation Canal. The allegations are to the effect that the ditch is a lead ditch constructed by the water users, and the only right the water company claims is the right to conduct water through the same under the reservations contained in the deeds. No rights of the company are sought to be affected by this proceeding but merely the right of appellees, who are two of the water users holding title under Stenger and who alleged that they wanted the ditch kept open at the place designated by the engineer of the company. We do not think the fact that the company is in the hands of a receiver appointed by the federal court has any bearing upon the questions arising in this case and therefore overrule the sixth assignment of error.

Judgment affirmed.