## HOUSTON FUNERAL HOME et al. v. BOE et al.

### No. 10253.

Court of Civil Appeals of Texas. Galveston.

Dec. 20, 1934.

Wm. Glover and Rosser Thomas, both of Houston, for appellants.

W. E. Monteith, Lewis W. Cutrer, and J. E. Cahoon, all of Houston, for appellees.

LANE, Justice.

This suit was brought by the Houston Funeral Home, a corporation, J. H. Johnson and S. P. Miller, individually and as officers and directors of the Houston Funeral Home, against Henry W. Boe, Slim Kent, Buster Kent, George Boe, Frank Glover, C. L. Cotton, and one Rossin, relators, alleging in substance that they were in possession of the physical properties and assets of the Houston Funeral Home, a corporation engaged in the business of conducting funerals and embalming, and that they were properly and successfully conducting the business of said corporation, and that on October 10, 1934, the re-

spondents banded themselves together and forcibly seized the property of said corporation and unlawfully and wrongfully and fraudulently and by threats, all of which were fully alleged, ousted the relators from their possession and from their management of the property and business of the Houston Funeral Home; that they had no adequate remedy at law; and that they feared that unless the equitable powers of the court were invoked and an injunction and temporary restraining orders issued in the cause that irreparable injury to relators and to said Funeral Home will result.

Relators prayed for a temporary injunction requiring respondents to restore the status quo of the business and property of said Houston Funeral Home, and that upon final hearing such injunction or mandatory order be made permanent. The petition of relators was duly verified and presented to Judge Hannay, judge of the judicial district court at Houston, who set the matter involved for a hearing on the 17th day of October, 1934, and ordered that respondents appear and show cause why the temporary injunction and restraining orders prayed for should not be granted.

Respondents filed an answer admitting that they had taken possession of the property and management of the Houston Funeral Home, but alleging that they had done so "in a quiet and peaceful manner." The respondents also filed a cross-action in which they asserted that at a stockholders' meeting on August 22, 1934, respondents Boe and Kent had been elected president and vice president of said corporation and that relators Johnson and Miller had been illegally declared elected as president and secretary, respectively, and sought in said answer and cross-action to have the controversy between the various parties litigated and their rights determined as to the management and control of said corporation.

After argument presented to the court with respect to the scope of the present hearing, the court announced substantially that at this time he would hear only the matter of a temporary injunction and proof as to the allegations of possession and ouster. At the conclusion of the testimony the court rendered his judgment refusing to grant the temporary writ of injunction restoring the status quo of the property pending a decision upon the merits of the cause, to which relators properly excepted and gave notice of appeal, and the case is brought to this tribunal for revision.

Appellants insist that the trial court erred in refusing to grant the writ of temporary injunction restoring the status quo of the property and business pending a decision upon the merits of the cause, for the reason that the undisputed evidence showed that relators were in peaceable and actual possession of the properties and management of said business of the Houston Funeral Home prior to October 10, 1934, and on that date respondents forcibly and by forcible trespass and by threats and fraud invaded the possession and management of relators and thus ousted relators from their possession and management, and therefore the writ prayed for by relators should have been granted.

Under the foregoing assignment relators submit the following proposition: "Where, pending a controversy between claimants to property and a right of management and control of a business, the possession thereof is taken by one claimant by forcible trespass or actual fraud or wrongfully from the claimant holding and using said property, a mandatory temporary injunction should issue requiring the claimant who has thus taken the property and management to restore it to the one from whose possession it was thus taken pending the trial of the issues between them."

We sustain appellants' assignment and proposition. Henry Boe, one of the respondents, testified that respondents met in a café in the early morning of the 10th day of October, 1934, and from there they went over to the Houston Funeral Home; that their purpose in going to the funeral home was to take the place over; that he invited the other respondents to go with him to take the home over and to change it up and put some new employees in there; that he had Mr. Housch to discharge some of the employees; that he told Mr. Housch that witness was now in charge of the funeral home; that he took the books of the corporation and put them in the hands of a public accountant and told him to start auditing them; that the books taken by him were books of accounts and notes; that he removed such books from Mr. Miller's office, where Miller kept them as bookkeeper for the corporation; that respondents got into Miller's office by opening the door and going in there, just opened the door and went in; that some of the books taken were in the desk and others were on top of the desk in Miller's office; that in the evening of the day on which he took the books he told Miller that he had taken them; that Miller did not come back because the books of the corporation were not there but were in a public account-

ant's office to be audited; that after respondents took charge, J. H. Johnson, claiming to be president of the corporation, came back the same day and had not been back since that time; that Johnson brought with him several plain-clothes officers and some special officers to have them take respondents to jail, under the claim that they were disturbing the peace, and that in the meantime respondents had gotten in two bodies and the men were all busy at work, and that he (witness) had been out on an emergency call "and that he was backing in off the call"; that Mr. Johnson and these officers were there and the officers came up and said that Mr. Johnson had asked them to arrest respondents for disturbing the peace and that witness told the officers that he didn't see how respondents were disturbing the peace, that everything was as quiet as could be; that Mr. Johnson wanted all of them taken down to police station as he was going to charge them with disturbing the peace.

Being asked if it was his intention to keep Johnson and Miller both from participation and management of the Houston Funeral Home, he said: "Yes, but not to keep them away." In other words, they could come to the funeral home if they wouldn't bother witness in running the business; that on the 31st of August he wrote letters to Johnson and Miller demanding that they turn over to him all books, records, notes, and other papers in their hands; Johnson and Miller had, at the time he wrote such letters, the books, records, notes, and papers belonging to the funeral home.

Witness Charles Chapman testified that he was at the Houston Funeral Home on the night of October 10, 1934, and that while there he heard Buster Kent, one of the respondents and a brother of Slim Kent, another of the respondents, say if Johnson came around there and raised any more trouble, making any more trouble, he was going to get his shotgun and kill him; that he told Johnson what Kent had said.

C. L. Housch testified that he was employed as an employee of the funeral home by J. H. Johnson in May, 1933, and was so employed up to the 10th of October, 1934, and during such time he received his instructions from Johnson, and that after October 10th Mr. Boe gave him instructions; that on said 10th of October, 1934, Mr. Kent told witness that they (respondents) had taken charge on authority from Austin; that on the night both sides were at the funeral home filing charges against each other he was told that if he took sides with Mr. Johnson's side, or any one

else's, he was going to be sent to the penitentiary; that one morning he heard Mr. Kent say that the books were on the way to Austin; "that we have our authority from Austin;" that this occurred on the morning of October 10, 1934.

J. H. Johnson, one of the relators, testified that he asked Mr. Boe to leave the place and he said he would not do so, that he (Boe) was president and was going to stay there; that while they were at the jail he saw a pistol taken from George Boe; that a man by the name of Murphy told him that Buster Kent had said he was going to whip witness every time he saw him; that he did not think he could have continued as president of the funeral home and in possession of its effects without danger of violence.

We think the evidence unquestionably shows that Johnson and Miller were in possession of the funeral home and its effects up to and long prior to October 10, 1934.

Reduced to its ultimate, the evidence shows that Johnson claiming to be the duly-elected president, and Miller claiming to be secretary and bookkeeper of the corporation, were in possession of the funeral home and its effects from May, 1933, to October 10, 1934, managing and controlling its business and in control of its employees, with authority to employ and discharge them; and that on the 10th day of October, 1934, the respondents, not in possession of the home, but claiming that some of them were duly elected officers of the corporation, entitled to possession of the home and its effects with authority to manage and control its business affairs, unlawfully entered the home in the absence of Johnson and Miller and took and carried away the books, records, and notes of the corporation without the consent or acquiescence of Johnson and Miller, or either of them, and are now holding and are attempting by force and threats to continue to hold possession of them.

In City of Farmersville v. Power Company (Tex. Civ. App.) 33 S.W.(2d) 272, 274, it is said: "In general, it may be stated that it is the duty of the trial court to grant a temporary writ of injunction when it is made to appear that there is a substantial controversy between the parties, and that one of the parties is committing an act or threatening the immediate commission of an act that will destroy the status quo of the controversy, before a full hearing can be had on the merits of the case and final judgment pronounced."

Again, on page 275 of the same decision, Judge Jones says: "Hence, it follows that the

specific question to be decided on this appeal is whether it was necessary for the issuance of the temporary injunction to maintain the status quo of the controversy until a final hearing in the case. * * * What is meant by the term 'status quo' as thus used? The general rule is that it refers to the last actual, peaceable, noncontested status of the parties to the controversy, which preceded the pending suit, and which should be preserved until a final decree can be entered."

In Berwald's, Inc., v. Brown (Tex. Civ. App.) 69 S.W.(2d) 221, 223, Judge Bond says: "Under the facts alleged, we cannot, with that sufficient degree of certainty that should control in matters of this kind, see that the equities require that the possession of the property should not be retained by appellant, pending the determination of the issues involved. The conclusion is based upon the proposition that the ownership of the property prima facie rests with the one who has possession, and where wrongfully taken such owner would be deprived of his possession and suffer damages, for which he would have no adequate remedy at law. The equities of the situation rest with him whose possession is thus wrongfully disturbed, and, in order to hold the matter in statu quo, a court of equity, in the exercise of its powers to prevent a wrong, will, by a temporary writ of injunction, stay an execution, so that the status of the parties will rest until their ultimate rights are determined through a full hearing on the merits."

In Hodges v. Christmas (Tex. Civ. App.) 212 S. W. 825, 827, it is said, quoting Mr. Justice Pleasants in Simms v. Reisner (Tex. Civ. App.) 134 S. W. 278, and Mr. Justice Reese in Chaison Townsite Company v. Wiess, 56 Tex. Civ. App. 611, 121 S. W. 716: "An injunction is not a remedy which can be used for the purpose of recovering title or right of possession of property, and it is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of title, except in cases in which the possession of another has been forcibly or fraudulently obtained by the defendants, and the equities are such as to require that the previous possession thus wrongfully invaded be restored, and the original status of the property be preserved pending the decision of the issue of title."

In James v. Weinstein (Tex. Com. App.) 12 S.W.(2d) 959, 960, Judge Leddy says: "The law is well settled in this state that the purpose of the issuance of a temporary injunction is to maintain the status quo in regard to the matter in controversy, and not to determine the respective rights of the parties under the cause of action asserted or defenses urged." Citing a number of authorities.

In Schroeder v. Rosenbaum (Tex. Civ. App.) 16 S.W.(2d) 328, 330, Judge Pleasants says: "We know of no rule of law or equity which would permit an adverse claimant to forcibly or without the consent of the possessor oust him from such possession, or that would deny to the person so in possession the protective remedy of injunction, and appellant has cited no such authority."

In Hightower v. Price (Tex. Civ. App.) 244 S. W. 652, 655, Judge Buck says: "Injunction is a proper remedy to restore the management, operation, and control of oil leases to the person entitled thereto, where he has been forcibly and fraudulently deprived of such right, management, and control by another without legal right."

In Hill v. Brown (Tex. Civ. App.) 225 S. W. 780, 783, Judge Talbot says: "A mandatory injunction may be issued under the same conditions as a prohibitory injunction, where the equities require it, and where the effect of the injunction is only to restore the plaintiff's possession which has been unlawfully, wrongfully, and fraudulently obtained and to preserve the status until the rights of the parties can be determined."

And again on page 782 it is said: "In keeping with this modern view, a mandatory injunction may be granted in a proper case, even without notice, for the purpose of restoring to the owner possession of the premises of which he has been deprived by trespass."

And again on page 783 it is said: "In such case the equities require, it occurs to us, that the right to an injunction restoring the possession to the appellees, who have been wrongfully evicted, should be recognized, and the status preserved pending a decision of the case on its merits. * * * The trial court in the instant case found that the appellants were holding the premises here in controversy as mere trespassers, and 'trespass' implies force. Among the many definitions of fraud we find that—'Fraud in the sense of a court of equity properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken by another. In all cases it implies a willful act on the part of any one whereby another is sought to be deprived by

illegal or inequitable means of what he is entitled to either at law or equity.' The trial court was authorized to find under the testimony and authorities that appellants were unlawfully, fraudulently, and forcibly holding the premises sued for against the appellees, and that such holding might result in injury to appellees."

In Red Ball Stage Lines v. Griffin (Tex. Civ. App.) 275 S. W. 454, 458, Judge Vaughn says: "The ownership of property prima facie rests with him who has possession, and where wrongfully—that is, in violation of his rights—such owner is deprived of his possession, the equities of the situation rest with him whose possession was thus wrongfully disturbed, and, in order to restore the status quo, that the wrongdoer may not gain an advantage by his wrongful act, a court of equity, in the exercise of its powers to prevent a wrong, or to stay one from obtaining an unconscionable advantage over another through a wrong, will, by a writ of mandatory injunction, restore the possession, so that the status of the parties will rest as aforetime."

In view of the facts shown, as above stated, and the several authorities from which we have quoted, we reverse the judgment and remand the cause, with instruction to the trial court to grant the temporary injunction prayed for by appellants.

Reversed and remanded, with instructions.