## HARTLEY et ux. v. BRADY et al.

### No. 4970.

Court of Civil Appeals of Texas. Amarillo.

Feb. 21, 1938.

Ronald Smallwood, of Corpus Christi, for appellants.

T. H. Burruss, of Corpus Christi, for appellees.

JACKSON, Chief Justice.

On November 19, 1937, the plaintiffs, F. V. Hartley and his wife, Leta, instituted suit in the district court of Nueces county against William C. Brady, trustee, and other defendants to have an oil and gas lease declared canceled, which they had executed to C. A. Nibert on January 21, 1937, covering lot 4 and 4 acres of lot 5 in the Ehlers Garden Tract, described in their petition by metes and bounds.

They pleaded that the land was leased for a primary period of six months from January 21, 1937, and so long thereafter as oil and other minerals were produced therefrom; that according to the provisions of the lease, if after the discovery of oil or gas the production thereof should cease from any cause, the lease should not terminate if the lessee began additional drilling or reworking operations within sixty days; that C. A. Nibert assigned the lease to William C. Brady, trustee, who caused a

well to be drilled thereon from which oil was continuously produced until September 10, 1937, on which date production ceased and no oil or other mineral had been produced for a period of more than sixty days thereafter, and no additional drilling or reworking operations had been begun, because of which the lease terminated and the title to the minerals reverted to the plaintiffs.

None of the defendants except William C. Brady appear to have been served with citation or to have answered at the time the proceedings here involved were had.

On December 1, 1937, William C. Brady answered that he was assignee of the leasehold estate involved and as such had drilled a producing oil well thereon, which had at all times been and still is a producing well.

In a cross-action, this defendant sought injunctive relief, and, as a basis therefor, pleaded that while the well produces oil, it does not produce a sufficient quantity of gas to use as a lifting agency to elevate the oil from the bottom of the well to the surface of the ground and place it in the tanks located on the lease; that a sufficient quantity of gas is required to successfully operate the well; that on October 1st the gas supply which he was using suddenly failed and it was necessary to procure gas from some other source; that since the supply of gas failed the defendant has, at great expense, bought pipe, brought in a producing gas well on another lease, and laid pipe therefrom to the boundary of the land here involved; that he was ready to connect this line with the well and able, ready, and willing to begin operation and production when F. V. Hartley, with firearms and threats, ejected his agents from the lease, and by intimidating and threatening to kill them, prevented the renewal of operations and the production of oil from the well.

The defendant says he has expended $15,000 in developing the lease; that the other defendants named but not cited have large interest in the well, which he is obligated to protect; that the well will be injured unless he be permitted to connect his gas line therewith and continue production; that delay is causing him great expense in maintaining a crew, is dangerous and could result in destroying the well as a producer and cause great damage thereto; that by the immediate use of the gas now available, production may be continued and damage to the well avoided. He says if the plaintiffs are not restrained, they will not allow him to operate the well and produce oil. He prays for an order restraining the plaintiffs and all parties claiming to be interested with them from interfering with his possession of the lease and producing oil from the well; that upon a hearing a temporary injunction be issued, which on a final trial be made permanent.

On December 1, 1937, the court, in chambers, issued a restraining order as sought.

On December 8th the plaintiffs answered, denied the possession of the defendant; asserted that they had and held exclusive and peaceable possession of the premises prior to the time they instituted their suit to cancel the lease; admitted they refused to permit the appellee to go on the lease because they believed the lease had been forfeited and he was a trespasser; alleged that the defendant was insolvent and unable to respond in damages and they apprehended the method he was using would result in serious and irreparable damages to the well. They also repeat in substance the allegations contained in their original petition.

Thereafter, on December 11th, the application for the temporary injunction was heard and all parties appeared in person and by their attorneys, the demurrer was overruled, and the judgment recites: "Upon a consideration of the pleadings and evidence offered and the argument of counsel thereon, the court is of the opinion that a temporary injunction should be granted as sought by William C. Brady." The clerk was directed to issue a temporary writ enjoining the Hartleys from interfering with W. C. Brady in the possession and operation of the well or connecting the pipe line therewith, or from intimidating in any manner the agents and employees of the defendant before a hearing on the merits, but as a condition to the issuance of said writ, the court required the defendant Brady to "execute a good and sufficient bond, conditioned and payable as required by law, in the amount of $2,500.00 to be approved by the clerk of the court," from which action of the court this appeal is prosecuted.

Appellants contend that their possession was not denied by appellee in his application for injunctive relief, and inasmuch as a preliminary injunction is not a remedy that can be used for recovering title to land or transferring the possession thereof to another, the court erred in granting the writ.

It is obvious from the original petition of appellants that appellee had and was entitled, under the lease and his assignment, to both actual and constructive possession of the land and the well until the lease ended; that the lease was to continue for a primary period of six months and so long thereafter as oil or other minerals were produced therefrom; that the lease had not been terminated by acquiescence, mutual consent, or agreement is evidenced by the fact that appellants instituted suit for the purpose of having the court declare the lease canceled, so their possession, if any, would be legal.

■ A preliminary injunction may be resorted to if a party having possession has been forcibly or fraudulently deprived thereof by another.

In Hightower v. Price, Tex.Civ.App., 244 S.W. 652, 655, the court holds: "Injunction is a proper remedy to restore the management, operation, and control of oil leases to the person entitled thereto, where he has been forcibly and fraudulently deprived of such right, management, and control by another without legal right." See, also, Houston Funeral Home et al. v. Boe et al., Tex.Civ.App., 78 S.W.2d 1091, and authorities cited; Simms v. Reisner et al., Tex.Civ.App., 134 S.W. 278; Jeff Chaison Townsite Co. v. McFaddin, Weiss & Kyle Land Co., 56 Tex.Civ.App. 611, 121 S.W. 716.

The application for injunction does not allege that appellee had been ejected, but that by threats and intimidation his agents and employees had been ejected and prevented from connecting the well with his gas supply, which was necessary so he could produce oil.

■ In a controversy such as is here presented, the general rule is that a preliminary injunction may issue to preserve, until a trial on the merits, the "status quo," "which * * * is the last, actual, peaceable, noncontested status which preceded the pending controversy." 32 C.J. par. 2, p. 21.

This announcement of the law is approved in City of Farmersville v. Texas-Louisiana Power Co. et al., Tex.Civ.App., 33 S.W.2d 271, 272.

The appellee sufficiently alleged in the application for injunctive relief his possession of the lease and well to cause the appellants in their answer to deny his possession and allege that they had and held exclusive and peaceable possession of the premises prior to the institution of their suit.

■ The pleadings were sufficient to make fact issues of the possession of the lease, the right thereto, and the question of forcible dispossession of appellee, upon all of which the court heard evidence, and, since there is no statement of facts in the record, we must conclude that the testimony was sufficient to authorize granting the writ.

The record before us does not show that the bond, required by the court in the sum of $2,500 before the writ should issue, was ever given, filed, or approved. The judgment is affirmed on the condition that the bond, if not given as required, shall be filed within ten days.