CARTWRIGHT v. WARREN. (No. 7462.)

(Court of Civil Appeals of Texas. Dallas. May 22, 1915.)

1. INJUNCTION &⚮⚮1 — "MANDATORY INJUNCTION"—"PREVENTIVE INJUNCTION."

Injunctions are "mandatory" or "preventive" according as they command defendant to do or to refrain from doing a particular thing.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 1; Dec. Dig. &⚮⚮1.

For other definitions, see Words and Phrases, Second Series, Preventive Injunction; also First and Second Series, Mandatory Injunction.]

2. INJUNCTION &⚮⚮133—MANDATORY INJUNCTION—INTERLOCUTORY APPLICATION.

A court of equity, though reluctant to grant a mandatory injunction on an interlocutory application and before final hearing, may do so in extreme cases where the right is clearly established and the invasion of the right results in serious injury.

[Ed. Note.—For other cases, see Injunction Cent. Dig. § 302; Dec. Dig. &⚮⚮133.]

3. INJUNCTION &⚮⚮143—MANDATORY INJUNCTION—INTERLOCUTORY APPLICATION—PETITION.

Where the petition in an action to restrain defendant from further interfering with a channel, and to require him to remove an obstruction from the channel, and permit water to pass as before the placing of the obstruction,

did not clearly charge defendant with anything more than obstructing and preventing the flow of surface water, it appearing that the word "channel" was used as synonymous with "draw," and left it in doubt whether defendant had obstructed a natural water course or stream with defined banks, it was error to grant a mandatory injunction giving the full relief sought, without notice to defendant and opportunity to be heard.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 315; Dec. Dig. ☜143.]

4. WATERS AND WATER COURSES ☜38 — "DRAW."

The word "draw," as commonly understood, does not mean a stream of running water with well-defined banks, as distinguished from the flow of surface water.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 30; Dec. Dig. ☜38.

For other definitions, see Words and Phrases, First and Second Series, Draw.]

5. INJUNCTION ☜137 — PRELIMINARY INJUNCTION—RIGHT TO GRANT—BALANCE OF CONVENIENCE AND HARDSHIP.

In a doubtful case, where the granting of a preliminary injunction will, if defendant ultimately prevail, cause greater detriment to him than will, if plaintiff prevail, be suffered by him through its refusal, the injunction should ordinarily be denied.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 307–309; Dec. Dig. ☜137.]

6. INJUNCTION ☜143 — PROHIBITORY INJUNCTION—RIGHT TO ISSUE—PETITION.

While, under the express provisions of Rev. St. 1895, art. 2994, the issuance of an injunction without notice is within the discretion of the trial judge, such injunction should not be granted unless the petition clearly shows a right thereto and necessity therefor, and that a temporary restraining order until the hearing on the application for a temporary injunction, will not amply protect plaintiff.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 315; Dec. Dig. ☜143.]

Appeal from District Court, Henderson County; John S. Prince, Judge.

Action by B. F. Warren against O. T. Cartwright. From judgment for plaintiff, defendant appeals. Reversed and remanded.

J. J. Faulk and W. R. Bishop, both of Athens, for appellant. E. P. Miller, of Athens, for appellee.

TALBOT, J. This is an appeal from an order of the district judge of the Third judicial district, made in chambers, granting to the appellee a prohibitory and mandatory injunction against the appellant. The injunction prayed for was granted and caused to be issued without notice to appellant, or an opportunity given him to be heard, and the question for our decision is whether or not the allegations of the petition show such facts as entitled appellee to the summary relief granted. The petition alleges, so far as is necessary to state, that the plaintiff and defendant own adjoining tracts of land of about 40 acres each; that the defendant's land lies east of the plaintiff's land, and the division line is about 550 yards long. The fifth paragraph of the petition is as follows:

"That about midway on said division line the water divides, and the water north of this division line runs north, and the water south thereof runs south. The petition further alleges that there is a wire fence separating the plaintiff's land from the defendant's land, which is practically on the dividing line; that there is a natural channel or water course, adjoining and on the east side of the said division fence, which begins immediately south of the division line set out and described in paragraph No. 5 of this petition, and said channel extends south and on the east side of said division fence a distance of about 250 yards, to where said channel intersects or comes in contact with another draw or natural channel which runs or courses practically east and west, and in this last-named channel the water runs east, or really it runs southeast; that there is a natural draw or channel coming from the northeast through a portion of the defendant's land, which carries considerable water, and the same intersects and empties its water into the said channel on the east side of the said fence, at a point about 100 yards south of the beginning of the said channel on the division line described in paragraph 5 of this petition; that a great deal of water accumulates and empties into the said channel coming from the defendant's land, and this in turn empties into the channel on the east side of the said fence, and in addition to this a great deal of surface water from the defendant's land accumulates and empties into the channel on the east side of the said fence; that at a point about 150 yards from the beginning point of the said channel, located on the east side of the said fence, and running south with said fence, the defendant has recently filled up a dam and obstruction in said last-named channel, and has opened up a passway for the water under the said division fence, and that the water in the future coming down said channel at said last-named point will be diverted by said obstruction, and will pass under said division fence, and the water will spread out over plaintiff's land and crop, and that it will destroy the plaintiff's crop and injure his land; that he expects to plant said land, and cultivate the same in potatoes within the next few days; that the defendant has completely stopped up the said channel on the east side of the said fence at a point about 150 yards from its beginning, as aforesaid, and the water cannot longer pass through and down the natural channel south of the said point, but is and will be diverted and caused to pass under said division fence to the west and on to the plaintiff's land and crop, as aforesaid; that, in truth and in fact, the defendant has opened up a way for the said water to pass under the said division fence and on to the plaintiff's land; that on the east side of the said division fence and at a point where the natural channel runs practically east and west, under and near said division fence, the defendant has built up a dump or dam, and has blockaded said channel, which will cause the water to back west and spread over the plaintiff's land and crops, and will thereby damage the plaintiff. Plaintiff further charges that the defendant is threatening and is in the act of opening up a water way, on the east side of said division fence, and by the side of the said division fence, and south of the said channel running practically east and west; that on account of the lay of the ground it is impossible for the water to be carried away; that the opening up of this channel will cause the water to spread over the plaintiff's land on the west, and injure the same, together with his crop; that the defendant has created a tank of water in the northwest corner of his said 40 acres of land; that said tank has considerable water in it, and has had for quite a while; that the defendant has so constructed

said tank that he has caused said water to spread out and back up over plaintiff's land, and to injure the plaintiff's said land, as well as said division fence; that by reason of all of which the plaintiff is prevented from using a portion of his said land. Plaintiff further shows to the court that by reason of all of the wrongs herein charged this plaintiff will be greatly damaged; that, if the defendant is permitted to continue said wrong, as he has already done and threatens to do, plaintiff will be greatly damaged; that said injuries are irreparable, and cannot be compensated in damages; that the plaintiff's farm or the east portion of it will be practically ruined and destroyed if the defendant is permitted to continue his wrongdoing and his said obstructions are not removed, and that his crops will be destroyed; that the defendant is not now, and would not be, in the opinion of the plaintiff, at the termination of this suit, the owner of property, real or personal, that is subject to execution, sufficient to satisfy this plaintiff for the damages he would ultimately sustain from the diversion of the said water from its natural channel as aforesaid and the flooding of his lands and crops, as the defendant is now doing and is about to do."

The prayer is for a writ of injunction "restraining the defendant from further interfering with said channel, and that the defendant be required, under the order of the court, to remove said obstruction in said channel, and that the water be permitted to pass as it did before the defendant interferred with the same," etc. By the judge's fiat indorsed on the petition the injunction as prayed for was granted, and the clerk of the court directed to issue the same upon plaintiff, giving bond in the sum of $300. The bond was given and the writ of injunction issued as directed, and the defendant appealed.

[1, 2] As is well understood, injunctions are mandatory or preventive according as they command defendant to do or to refrain from doing a particular thing. And, while a court of equity is always reluctant to grant a mandatory injunction upon an interlocutory application and before final hearing, it may yet do so in an extreme case when the right is clearly established and the invasion of the right results in serious injury. High on Inj. (4th Ed.) § 2. Mr Joyce, in his excellent work on Injunctions (section 97a), states the rule substantially as follows: An applicant for a preliminary mandatory injunction is required to show a clear right and a case of necessity or extreme hardship, and the court will seldom grant a mandatory injunction pendente lite unless the plaintiff's right is so clear that the denial of the right must be either captious or unconscionable. In other authorities it is held that, to justify a court of equity to issue a mandatory injunction before hearing and without notice, the complainant must show "a strong and mischievous case of pressing necessity." In the case of Railway Co. v. Anderson County, 150 S. W. 240, Chief Justice Pleasants, in delivering the opinion of the court, correctly said:

"The power of a court of equity to grant a preliminary injunction without notice to the defendant should never be exercised unless there is pressing necessity for such action, and, as a general rule, a mandatory injunction should not be ordered before a final hearing of the case and for the purpose of executing the judgment of the court. The usual purpose of a preliminary injunction is to maintain the status quo of the subject-matter of the suit, or to prevent impending injury, and when the issuance of such injunction would have the effect of granting all the relief that could be obtained by a final decree, it should not be granted, except in cases of extreme hardship. The instinct of justice which forbids that one should be condemned without a hearing permeates our whole system of jurisprudence, and, while cases may and do occur in which the danger of irreparable injury is so great and so pressing that the restraining hand of equity should be immediately interposed to prevent such injury, the present case cannot be placed in that category."

[3] And so we think it may be said in the case before us that, if the allegations of the plaintiff's petition show definitely any cause of action at all, they fail to show any such emergency or pressing necessity as justified the issuance of the mandatory injunction herein granted, without notice to the defendant and an opportunity to be heard. Indeed, as said in Holbein v. De La Garza, 126 S. W. 42:

"It is rarely, under our equity procedure in regard to the issuance of injunctions, that it becomes necessary to issue a temporary writ of injunction, even a merely prohibitory writ, without a hearing. If it appears necessary from the allegations of the petition that a defendant be stopped at once and without the delay necessary to give notice and an opportunity to be heard, a temporary restraining order may in all cases be issued compelling immediate cessation of the threatened injury until such time as may reasonably be required to allow the defendant to present his side of the case, which may change the whole aspect of the controversy. If it be said, in answer, that a defendant may obviate this difficulty by a motion to dissolve, wherein he may fully present his objections to the issuance of the writ, the reply is apt and conclusive that, under the peculiar rule adopted by the Legislature allowing appeals from an order granting a temporary injunction, but not to an order refusing to vacate on motion to dissolve, a defendant would ordinarily lose, by lapse of time, his right to appeal from the order granting an injunction if he delayed until his motion to dissolve could be heard."

The plaintiff, by his petition in the case at bar, as will be observed, sought and obtained a prohibitory writ of injunction restraining the defendant from "opening up a water way on the east side of the division fence" between his land and the defendant's, and south of the channel alleged to run practically east and west, which he says defendant was threatening to open up, and which he says, if done, would cause the water to spread over his land on the west and injure the same and his crops, and also a mandatory writ commanding defendant to remove the obstruction which had already been placed in the channel on the east side of the division fence at a point 150 yards from its beginning, and north of the place where he was threatening to open up a water way. This mandatory writ was absolute, and its effect was to require the defendant to at once remove the obstructions placed by him in the chan-

nel referred to. It granted to the plaintiff all the relief he could obtain on a final hearing upon proof of every material allegation in his petition. The petition discloses no sufficient reason for granting such relief without notice to defendant and an opportunity given him to be heard. Indeed, it may be seriously doubted from the language of the petition that defendant is charged with anything more than obstructing and preventing the flow of surface water upon his land.

[4] The word "channel" seems to be used in the petition by the pleader as synonymous with the word "draw," and the word "draw," as commonly understood and in the sense here used, does not mean a stream of running water with defined banks, as contradistinguished from the flow of surface water. If the fair construction of the petition is that it charges the defendant with obstructing and impounding surface water upon the plaintiff's land, then no cause of action whatever is shown. Barnett v. Matagorda R. & I. Co., 98 Tex. 355, 83 S. W. 801, 107 Am. St. Rep. 636. And, if the language of the petition does not make it clear that the defendant has obstructed a natural water course or stream with defined banks, but leaves the same in doubt, then neither the prohibitory nor mandatory injunction should have been granted, without notice to the defendant, or, if the allegations of the petition fail to show a clear right and case of necessity or extreme hardship, the action of the court in granting the mandatory injunction was unwarranted, and should be set aside.

[5] It may also be stated in this connection that the balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of the granting or refusing the preliminary injunction. Such a doubt may relate either to the facts or to the law of the case, or to both, and it is a well-recognized rule that:

"In a doubtful case, where the granting of the injunction would, on the assumption that the defendant ultimately will prevail, cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant through its refusal, the injunction usually should be denied." Joyce on Inj. vol. 1, § 25.

[6] It is unquestionably true that, "as to the issuance of the prohibitory injunction without notice, much must be left to the sound discretion of the judge" (Rev. Stat. 1895, art. 2994; Holbein v. De La Garza, 126 S. W. 42), but it occurs to us that the petition does not charge with sufficient definiteness and certainty that the flow of water which the defendant, according to the allegations of the petition, was threatening to divert and cause to be impounded upon plaintiff's land, was that of a running stream with well-defined banks, as distinguished from surface water, to justify even the issuance of the prohibitory injunction, granted in this case, without notice. A temporary restraining order, until a hearing upon the application for a temporary injunction, would have amply protected the plaintiff. An injunction is a harsh remedy, and should not be granted in the first instance, except upon a pretty clear prima facie case and upon positive averments of the equities on which the application for the relief is based. 1 High on Inj. (4th Ed.) § 34. Our conclusion is that the injunction in this case was, for the reasons indicated, improperly granted.

It is therefore ordered that the judgment below be reversed, and that the writ of injunction as to both its prohibitory and mandatory features be set aside and vacated, and the cause remanded for proceedings in accordance with this opinion.