BEVERS et al. v. HUGHES et al. (No. 1207.)

(Court of Civil Appeals of Texas. Amarillo. April 25, 1917. Rehearing Denied May 30, 1917.)

1. WATERS AND WATER COURSES ⬤➡119(1)— SURFACE WATER—DIVERSION.

By express provision of Acts 34th Leg. (1st Called Sess.) c. 7, § 1, the natural flow of surface water may not be diverted in such manner as to damage the property of another.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 131, 132.]

2. JUDGMENT ⬤➡248—ORDER FOR INJUNCTION —PLEADING AND EVIDENCE TO SUPPORT.

An order in suit to enjoin construction of a levee, as diverting surface water, to plaintiff's injury, permitting a different levee, without pleading or evidence to support it, is improper.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 434.]

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Action by W. D. Bevers and others against J. E. Hughes and another, for injunction. From the judgment, plaintiffs appeal. Reversed and rendered.

Elliott & Moss, of Memphis, for appellants. Spencer & Clark, of Memphis, and Fires & Diggs, of Childress, for appellees.

HUFF, C. J. This is an appeal from an order in chambers, entered by the judge of the Forty-Sixth judicial district, upon a petition praying for a temporary injunction, and also praying that upon final hearing the injunction be perpetuated. The court, upon the presentation of the petition, ordered the issuance of the temporary writ, but set down a day for a hearing. Upon the hearing on the petition, answer, and evidence, he modified his former order, and also entered an order or permission to build a levee at a point not proposed by the defendants, and upon which no prayer for injunction was sought in the petition. The appellants, W. D. Bevers, Tom Evans, and Geo. W. Bugbee, sought to enjoin J. E. Hughes and J. Q. Durham from constructing an embankment or levee over lands belonging to the defendants for the alleged purpose of diverting the natural flow of water from John Mann creek on and over lands belonging to the plaintiffs, the appellants herein, which they allege would, if permitted, inflict irreparable injury thereto. The allegations and the evidence show that the defendants own section 81 and the north half of section 72, and are threatening to erect and to build a dam or embankment along the east line of their sections; that Evans owns 200 acres out of section 72, and adjacent to and immediately south of the north one-half of the section owned by Hughes, No. 72; and that Bevers and Bugbee own section 40, which lies immediately south of 72. The appellees Hughes and Durham have in part constructed, or are threatening to construct, on their respective lands, an embankment over their land along their east line from a point upon section 81 belonging to Durham, down to the southeast corner of Hughes' half section out of section 72. It is alleged the embankment erected, or to be erected, is to be seven feet high, and there is some evidence that it is or will be six or seven feet high. It is alleged that this embankment is and will be erected across a stream known as John Mann creek, and will divert the water from its natural course and throw it upon the lands of appellants below, Hughes' portion of section 72. The allegations and evidence show that John Mann creek rises in Donley county, traversing a distance estimated at from seven to ten miles before reaching sections 81 and 72, and that its general course is southwest, and that it finally empties into a branch of Red river. Up to a point of between 300 or 600 yards in section 80, which is immediately adjacent to and east of the two sections, 81 and 72, the creek has well-defined banks; but at that point the evidence shows there is some kind of a fork—the banks of neither fork are shown to be well defined, if any existing at all.

Appellants contend that the stream actually follows what we may term the west fork and through a corner of Durham's land; then onto Hughes' land and out of it onto the land south. The evidence is rather unsatisfactory and meager as to whether this water so flowing again unites with the other branch south of there and forms part of the stream entering Red river. The appel-

lees contend, and offered testimony, that the stream is what we term in the record east or south of Hughes' north half of section 72, and strikes and enters the Evans land and traverses the other land in question; that only overflows from extraordinary floods pass through Durham's and Hughes' land, on what we may term the west stream; and that that is not the channel of the creek. The entire evidence tends to the conclusion that, at the point in section 80 where the evidence of the banks of the streams is not discernible, the waters from the upper portion of the creek spread out into a sandy flat or valley, the width of which along the line of the embankment proposed is somewhere near 1,400 yards. In times of flood and during heavy rains, the waters discharged in this valley flow over much of the valley. However, by the various witnesses it is described as flowing in streams—some saying east and some west. It is undisputed that Durham has had some sort of levee for eight or nine years, and on several occasions this has been washed out by the flood waters, and that Hughes erected a small embankment joining Durham's, and that his embankment had been washed out; the places so washed out being 2 or 3, and one washout being described as about 30 feet, wide. The evidence shows that the water coming down onto the north line of Hughes and the south line of Durham will, by the embankment, be diverted along the east line of the appellees' two tracts of land to Hughes' southeast corner. It is not clear from the evidence that the stream as contended for by appellees will be reached by an extension to the southeast corner of Hughes' tract, and we infer that it will not be so reached, but that the water will be left to make its way across intervening land, in order to reach that channel, if there is one. The evidence, we do not think, shows a well-defined channel on either the east or west branches, but indicates that there is more of a depression at those points in a sandy valley along the alleged stream. The evidence shows that the fall of this creek or valley is 60 feet to the mile.

The parties appear, by their pleadings and evidence, to have tried to show that the respective east and west branches are, or are not, the channels of John Mann creek—evidently upon the theory that in this state what is called the common law on this question prevails. Under the rules as to what is or is not a stream, it would be difficult to determine in this case that there was a stream at the points in question, or, if so, which it is. Or, whether the waters therein should be treated merely as surface water, which the owner of the land, under the common-law rule, would have the right to build embankments against or obstruct, regardless of the effect it might have upon the lower land or estate. We do not deem it necessary to discuss this question, and will only refer to a few authorities on the point: Barnett v. Matagorda, 98 Tex. 355, 83 S. W. 801, 107 Am. St. Rep. 636; Gramann v. Eicholtz, 36 Tex. Civ. App. 309, 81 S. W. 756; Gross v. Lampasas, 74 Tex. 195, 11 S. W. 1086; Wilborn v. Terry, 161 S. W. 33; Cartwright v. Warren, 177 S. W. 197; Walenta v. Wolter, 186 S. W. 873; Booker v. McBride, 16 Tex. Civ. App. 348, 40 S. W. 1031; Batla v. Goodell, 53 Tex. Civ. App. 178, 115 S. W. 622; Miller v. Madera, 155 Cal. 59, 99 Pac. 502, 22 L. R. A. (N. S.) 391; 40 Cyc. 555 and 642.

The Thirty-Fourth Legislature, at the First Call Session, p. 17, has modified the rule as it existed in this state prior to that act. The act is as follows:

"Section 1. That it shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this state or to permit a division thereof caused by him to continue after the passage of this act, or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this act, in such a manner as to damage the property of another, by the overflow of said water so diverted or impounded, and that in all such cases the injured party shall have remedies in both law and equity, including damages occasioned thereby, provided that the passage of this act shall in no way affect the construction and maintenance of levees and other improvements for the purpose of controlling floods, overflows and freshets in rivers, creeks and streams, nor the construction of canals for the purpose of conveying waters for irrigation; and provided further that nothing in this act shall be so construed as to authorize or give authority to persons or corporations owning or constructing canals for irrigation or other purposes, to construct or maintain any canal, lateral canal or ditch in such manner as to obstruct any river, creek, bayou, gully, * * * ditch or other well defined natural drainage."

[1, 2] By this act, the diversion of surface water from its natural flow may not be done in such manner as to damage the property of another. Under this statute, if it was not the rule previous thereto, the owner of the dominant estate may not, to the injury of the subservient estate, divert the water from its course which it would have naturally followed, and discharge it through new artificial channels, or cause it to discharge upon the lower estate at a point which would not have been its natural destination. 40 Cyc. 646. The trial court at first restrained the defendants from proceeding with the erection of the embankment and from ditching. Upon the hearing, the judge, by order, set aside the former restraining order and granted a temporary restraining order against the defendant Hughes from building a levee extending south from his northeast corner further than 1,920 feet, from same, but permits the building of the 1,920 feet and refused the restraining order as to Durham. He permitted Hughes to build to within 720 feet of his southeast corner and permits him from that point, if he so chooses, to build a levee due southwest to a point in his south line, 720 feet due west of his southeast corner. From this we think the court evident-

ly found that the water, by artificial means, would be diverted from its natural course and upon the land of the plaintiffs, and, if the embankment was carried the full length of the east line to the southeast corner of Hughes, it would damage the lands of the appellants. He therefore stopped the levee at 720 feet from that point, but, presumably to protect the lower estate, he permits in his order the erection by Hughes of a levee which neither party anticipated either by the pleadings or evidence. They neither requested this divergency as a solution of the difficulty. This part of the order is without pleading or evidence to support it. The appellants complain that it should not have been permitted. In this we think they are correct. They should be permitted to show, if they can, the effect this new departure would have upon their land. While this order is permissive, it yet would warrant the defendant Hughes to so construct this levee under the sanction and by direction of the judge, without an opportunity being offered the appellants to be heard on the question. This part of the court's order evidences that he regarded the levee, if extended as contemplated by the appellees, would be a damage to the lands of the appellants, and he therefore sought to lessen such damages by making an angle at 720 feet from a point north of the southeast corner of Hughes' land. This, we think, ought not to be permitted without some pleading and evidence, or upon a full investigation had upon that point. It appears the court concluded there should be some restraint, and the relief granted could not under the pleadings, we do not think, be administered; in fact, appellants could not have required Hughes to erect the levee as permitted by the court. If such a levee would be a relief to the lands of the appellants, they should be in a position to enforce it. The order should not leave its enforcement to the option of Hughes. It seems to us on the order of the court he concluded that the appellants were entitled to some relief. We believe, therefore, a temporary restraining order should be granted, restraining both Hughes and Durham from further building the levee on their respective lands or ditching the same along the line, so as to carry the water onto lands of appellants. We think there was no error upon the part of the trial court in refusing the mandatory writ upon the temporary or preliminary hearing.

It will be the order of this court that the judgment above entered upon hearing before the judge be set aside, and that the restraining order as prayed for and granted by the judge, upon the petition, be continued until a hearing and trial of this cause upon its merits be had at a regular term of court. It will be the order of this court that a bond, conditioned as required by law, in the sum of $1,000, be executed by the appellants, with two or more good and sufficient sureties thereon, to be approved by the clerk of the district court of Hall county.

The judgment of the court will be reversed and rendered.