## KAHN et al. v. BAUCH LEATHER CO.
### (No. 3206.)

Court of Civil Appeals of Texas. Amarillo.
March 13, 1929.

Rehearing Denied May 29, 1929.

See, also, 275 S. W. 173; 293 S. W. 259.

Bullington, Boone, Humphrey & King, of Wichita Falls, for plaintiffs in error.

Taylor, Muse & Taylor and Bert Derden, all of Wichita Falls, for defendant in error.

RANDOLPH, J. The parties herein will be styled as in the trial court. This suit was filed in the district court of Wichita county by the Bauch Leather Company, a partnership, as plaintiff, against Mrs. Minnie Kahn, individually and as executrix of the estate of Alex Kahn, deceased, and their children, the heirs of his estate, to recover damages alleged to have been caused to the plaintiff's stock of goods and building by the defendants diverting and impounding water, causing an overflow into the plaintiff's building, and thereby damaging said stock of merchandise and building.

The case was tried before a jury, and, on their answers to special issues submitted to them, the trial court rendered judgment in favor of the plaintiff. From that judgment appeal has been taken to this court.

A full statement has been made by the court of the location of the property of the parties in this suit in the case of Kahn v. Bauch (Tex. Civ. App.) 275 S. W. 173, but it will be necessary for the purposes of the decision of the case at bar to again repeat briefly some of the facts set out in the former opinion.

Block 152 of the city of Wichita Falls, Tex., is bounded on the north by Sixth street, on the south by Seventh street, on the west by Indiana avenue, and on the east by Ohio avenue. This block has an alley running through its center north and south from Sixth street to Seventh street. The block was originally subdivided into fourteen lots, beginning at its northeast corner with lot No. 1, and then followed south by the lots as numbered to No. 7, which was on the southeast and south of the block and east of the alley. These lots face Ohio avenue to the east. Lot No. 8 is on the south and west corner of the block, and it is joined on the north by lot No. 9, which in turn is joined on the north by the other lots 10, 11, 12, 13, and 14, all facing Indiana avenue, lot 14 being the northwest corner, and all of the last-named lots lying west of the alley. This division of the block placed lots 8 and 9 in the southwest corner of the block. These two lots, while not platted in their new form on the record, were, in fact, subdivided into six lots by deeds. The new order for this subdivision began with lot No. 1 off of the east end of lots Nos. 8 and 9, and lies next to the alley, and lots 2, 3, 4, 5, and 6 follow in succession towards the west,

thus placing lot No. 6, belonging to the defendants, in the southwest corner of the block and facing south on Seventh street 25 feet and lying 100 feet on Indiana avenue.

The deeds to these last-named lots, which served to rearrange and renumber lots 8 and 9, call for lots Nos. 1, 2, and 5 to be 25 feet in width and 90 feet long—the depth of lot No. 3 is not shown, but the deeds to lots 4 and 6 show them to be 25 feet by 100 feet. This arrangement of the lots gives a vacant space on the north of lots 1, 2, and 5, and on the ends of same; and south of the north line of the original lot No. 9, of a depth of 10 feet. Lots 4 and 6 call for the full length of 100 feet, making their north line coincide with the line of lot No. 9. It appears from the record that this vacancy had been used as an alleyway for passage from these lots from Indiana avenue into the alley on the east. The questions involved in this suit were not passed on in the former case above referred to. The questions therein considered related to the right of the plaintiffs to secure the issuance of an injunction against the erection of a building which was alleged to be an obstruction to the free use by the plaintiffs and the public of an alley that had been dedicated to their use and the use of the public by the use thereof for more than ten years next preceding the filing of that suit.

In the case at bar, the controlling question is: Was the water diverted by the erection of the wall from its natural drainage, and, thereby being impounded, causing it to flow into plaintiff's building and damaging them, as alleged in their petition?

There are some incidental questions which will be discussed in connection with the main question stated.

It appears from the record, in addition to what has been stated, that no building had been erected to cover the vacancy at the ends of lots 1 to 6, as they are described above, but that such vacant space was used as an alleyway in connection with the alley running north and south; that lots Nos. 6 and 4 were each deeded to run 100 feet in depth; that the defendants had built upon lot No. 6, with the exception of 10 feet at the north end of said lot, leaving the vacant space aforesaid, and had begun the erection of a building upon said 10-foot space, when they were stopped by the injunction issued in the former suit, which is still pending. However, there is no question of title or right in question here, as it is agreed that the 10-foot passageway on which defendants sought to erect a building was not a public alley, but belonged to defendants, in so far as this case is concerned.

It also appears from the record that the water that came off the defendants' building did not flow into said vacant space, but that the water that was impounded by the wall of the building which defendants had attempted to erect came from the roof of the plaintiff's building and other buildings on the east of the defendants. Further, the record shows that the space back of these buildings, including defendants' building, had been paved. By whom this was done the record does not show.

The evidence showing the natural flow of the surface water leaves us in doubt as to whether it would flow west and was impounded by the wall, or would flow north and thus escape. While this is true, the answers of the jury were based upon issues properly submitted to them, and we must concede the controlling fact of their verdict upon this issue.

The defendants leveled a general demurrer to the plaintiff's petition, which the court overruled, and the defendants here contend that the general demurrer should have been sustained, because the allegations as to damage are mere conclusions of the pleader. We overrule this contention without discussion.

The court submitted to the jury the following issue, together with the explanation or definition thereto attached:

"Special Issue No. 1. Did the defendant Kahn, by the erection of the wall in question, obstruct the natural flow of water from the premises of plaintiffs? Answer Yes or No.

"By the term 'natural flow of water' as used in this charge is meant the course water will flow prior to the time any obstruction of any character by man was placed in the vicinity of said premises." This issue the jury answered "Yes."

The defendants specially pleaded: "The defendants further say, in answer to the plaintiff's petition, that they did not cause any water to go from their premises on to the premises of plaintiffs and that if any water or other substance did flow on to the plaintiff's premises and do any damage at all to the plaintiff, said flow or impounding of water, as well as the damage done thereby, if any, was caused by others than these defendants."

The defendants also tendered to the court the following special issue related to the issue above set out as having been given by the court: "Did the pavement as laid in the passage way in question obstruct the natural flow of water?"

Before proceeding to the discussion of the indicated principal question in the case, we will dispose of the defendants' contention that the waters impounded were augmented by the flow from the plaintiff's and other buildings by the acts or industry of man in erecting the buildings from which the waters flow into the space in which they were impounded, and that the defendants had a right to barricade against such water. To sustain this contention, the defendants cited Higgins v. Spear (Tex. Civ. App.) 283 S. W. 584. The rule laid down in that case does not apply here. There is no evidence that

the water that came off the roofs of the buildings east of the defendants' building was augmented by any additional water that would not have run off the ground covered by the buildings, if such buildings had not been erected. Further, the defendants did not plead that the volume of water coming off such roof had been augmented by the diversion of other water, the natural flow of which would have carried it on another course. The trial court did not submit any issue which required the jury to find whether or not such flow of water was augmented, and the defendants made no request for the giving of such issue. If the pleading and the evidence had justified the submission of the issue, the failure on the part of the defendants to request its submission was a waiver of their right to require it. Ormsby et al. v. Ratcliffe (Tex. Sup.) 1 S.W.(2d) 1084.

The defendants assign error on the refusal of the trial court to instruct the jury, peremptorily, to find a verdict for them, for the reason that the evidence wholly fails to show that the waters impounded were surface water within the meaning of the term, and, on the contrary, that the evidence shows affirmatively that the building or wall in controversy was not erected across any gully, slough, ditch, or other well-defined natural drainage, and therefore did not interfere with the natural flow of the water.

Article 5011t, Vernon's Revised Civil Statutes of Texas Supp. 1918, provides as follows:

"Art. 5011t. *Diversion of Surface Waters; Remedies; Provisos.*—That it shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this State or to permit a diversion thereof caused by him to continue after the passage of this Act, or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this Act, in such a manner as to damage the property of another, by the overflow of said water so diverted or impounded, and that in all such cases the injured party shall have remedies in both law and equity, including damages occasioned thereby, provided that the passage of this Act shall in no way affect the construction and maintenance of levees and other improvements for the purpose of controlling floods, overflows, and freshets in rivers, creeks and streams, nor the construction of canals for the purpose of conveying waters for irrigation; and provided further that nothing in this Act shall be so construed as to authorize or give authority to persons or corporations owning or constructing canals for irrigation or other purposes, to construct or maintain any canal, lateral canal or ditch in such manner as to obstruct any river, creek, bayou, gully, slough, ditch or other well defined natural drainage."

This article was dropped from the Revised Civil Statutes of 1925, but was again added by amendment as article 7589a (Complete Tex. St. 1928), by the Legislature of 1927 (chapter 56). However, the act as quoted was in effect in 1924 when the damage claimed by the plaintiffs was occasioned them.

It will be seen that the language of the article quoted provides that it shall be unlawful for any person, etc., to divert the natural flow of the surface waters in this state or to permit a diversion thereof caused by him to continue after the passage of the act, or to impound such waters or to permit the impounding thereof caused by him to continue after the passage of this act, in such manner as to damage the property of another by the overflow of said water so diverted or impounded.

The evidence as to the course the water would naturally take in draining from the open space at the end of the lots was conflicting. The evidence shows that the Wichita river lays to the north of block 152. Mrs. Kahn testified that the surface water drained to the river; that just north of her building was a wagon yard, just an open level surface.

Emil Bauch, one of the plaintiffs, testified:

"Before the occasion of February 11, 1924, I never knew of water coming into our building. I have observed the water in these twenty years as it passed through this passage way.

"It flows in a westerly direction. I do not recall when that alley was paved the first time, but I think it was ten or twelve years ago. According to my earliest recollection relative to the condition of that passage way it was just open ground. The water just took a natural drainage like a creek or anything else; the water ran west towards Indiana Avenue. About twenty years ago a wagon yard was located on the other side of this passage way, which was operated by Mr. Frank Burns, chief of police. They had some sheds back there. This wall I am speaking of is solid, but the alley or passage way is paved, the space right back of the building on the right hand side. Our building was 70 feet from the rear of that passage way all the way through. The tier of buildings on the right hand side came back to ten feet of that wall.

"During this period of time I have seen people using that passage way, driving through it, being used by vehicles. Before the passage way was paved just ordinary wagon tracks would be left there. I have seen the water when it followed the course of the wagon tracks, and it would run west.

"When water from this passage way goes into Indiana Avenue, it runs north."

Nat Henderson, who had been a deputy county surveyor, testified: "I have a good general idea of which way the water ran from the Busy Bee Fruit Store before the streets were graded; it ran towards the river and the railroad tracks, unless there happened to

be some depression. I don't remember of any depression in that block, between Indiana and Ohio and 7th and 6th. My recollection is the water ran towards the river and towards Ohio Street."

Another party, a witness for the defendants, testified: "I should say that the water did not go north."

Emil Bauch, recalled, stated: "I believe there are six buildings between the alley and Indiana. The top of my building slopes towards the alley, towards the river. I suppose that is towards the river. The building slopes to the north. I think all of the buildings are built to slope to the north. There was never a gully or well defined ditch to any of those buildings that I know of. It was not exactly a level floor when I came here. I don't know whether they hauled any dirt and put it in there or not. There was no well defined street in there and there were no sewer connections or anything like that, neither was there any embankment there. I don't know whether there was any gully there, I couldn't say. I guess there might have been a small ditch, whatever the water makes,— whatever the wagon tracks would make. I don't suppose there was any drain there without the water following the wagon tracks. There was no obstruction to the north when I came there."

■ As stated above, the evidence upon the course of the natural flow of the water is very unsatisfactory, but, the issue having been submitted to the jury and answered by them, we will not disturb their verdict. Hodde v. Malone Real Estate Co. (Tex. Civ. App.) 196 S. W. 347; Nowlin v. Hall, 97 Tex. 441, 79 S. W. 806; Mansfield v. Rigsby (Tex. Civ. App.) 273 S. W. 290.

■ It has been held that the common-law rule that an owner of land may, for his own protection, divert natural surface water, although it results in injury to the land of his neighbor, has been changed by the above-quoted article, and that under this statute the natural flow of surface water may not be diverted in such manner as to damage the property of another. Bevers v. Hughes (Tex. Civ. App.) 195 S. W. 651; Hester v. McAdams (Tex. Civ. App.) 203 S. W. 121. We therefore hold that the instruction above quoted, which was submitted to the jury by the court, was proper.

■ ·The defendants pleading, as above, that the act of another was the cause of the diversion to the injury of the plaintiff, was sufficient, in the absence of a special exception, to require the trial court to submit to the jury the issue as to whether or not the pavement laid in the passageway obstructed the natural flow of the water. The question of such obstruction was thus affirmatively presented. The evidence shows that the wall erected by the defendants on the west, the defendants' building on the south, and the plaintiff's building on the east, formed an inclosure that might have been assisted by the construction of the pavement in the impounding of the water, and, in the consideration of the course of water drained from this inclosure, the defendants were entitled to an affirmative presentation before the jury. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; ℃. & S. Ry. Co. v. Rowe (Tex. Com. App.) 238 S. W. 909; Wichita Valley R. Co. v. Williams (Tex. Civ. App.) 6 S.W.(2d) 439; Robinson v. Ætna Life Ins. Co. (Tex. Com. App.) 276 S. W. 900; Northern Texas Traction Co. v. Woodall (Tex. Com. App.) 299 S. W. 220; Oilbelt Motor Co. v. Luke Hinton (Tex. Civ. App.) 11 S.W.(2d) 238; Brewton v. Butler (Tex. Civ. App.) 12 S.W.(2d) 228, 229.

For the reasons stated in the last paragraph, the judgment of the trial court will be reversed and the cause remanded for a new trial. All other propositions and assignments are overruled.

Reversed and remanded.