## TEXAS PIPE LINE CO. v. BURTON DRILLING CO.

### No. 11371.

Court of Civil Appeals of Texas. Dallas.

Sept. 24, 1932.

Motion for Rehearing Dismissed Oct. 29, 1932.

H. S. Garrett, of Fort Worth, and Wm. K. Hall, of Houston, for appellant.

Hamilton & Hamilton, of Dallas, for appellee.

LOONEY, J.

At the suit of Burton Drilling Company, the court below issued, ex parte and without notice, an interlocutory mandatory injunction commanding the Texas Pipe Line Company, a common carrier engaged in transporting crude oil, to desist from refusing to accept and transport certain petroleum oil belonging to appellee, and to accept and transport same in due course of business, until further ordered by the court.

Without moving to dissolve or to suspend operation of the writ, the pipe line company appealed direct from the order; hence the allegations of appellee's petition, for the purposes of this appeal, will be accepted as the undisputed facts. Royal Brewing Co. v. Missouri, K. & T. Ry. Co. (D. C.) 217 F. 146; Athens Tel. Co. v. City of Athens (Tex. Civ. App.) 163 S. W. 371.

The case briefly stated is this: Between July 2 and 28, 1932, appellee owned and held ready for transportation 65,000 barrels of oil, and tendered same to appellant for such purpose, which appellant refused until and unless appellee complied with Special Order No. 120 promulgated July 28, 1932, by the railroad commission of Texas, requiring pipe lines, before transporting oil, to secure from the person, persons, firm, or corporation tendering same for transportation, an affidavit giving the names and addresses of the owner or the person or company making the tender, also the name of the consignee and for whose account consigned, stating who produced the oil, naming the lease where produced by its survey, and the county where located, the number of wells on the lease from which the oil was produced, the date or dates when produced, the amount produced daily from said lease, and whether or not the oil so tendered was legally produced according to the provisions of the statute and orders and rules of the railroad commission. Appellee alleged its inability to comply with the requirements of the order of the commission, because at the time the oil was acquired by it, neither the statute nor any order of the commission required such preliminary proofs; therefore, in order to meet the demands of appellant, appellee went before the railroad commission and the Attorney General's department of the state with an application for an order to permit its said oil to be run and transported by appellant without complying

with Special Order No. 120; that on August 25, 1932, the commission, after reciting the fact that said oil had been produced and purchased by appellee prior to the taking effect of Order No. 120, entered an order as follows: "It is ordered by the Railroad Commission of Texas that Special Order No. 120 be, and it is hereby waived insofar as the transportation of the 65,000 barrels of oil by Burton Drilling Company, as hereinabove set forth, is concerned and such carrier or carriers to which said oil may be tendered are herewith and hereby authorized to accept, transport and deliver such oil without the compliance with the terms and stipulations of said Special Order No. 120." The allegation is made that after the commission made the order just mentioned, appellee again tendered the oil to appellant for transportation to the consignees to whom the oil had been contracted, but that appellant persistently, arbitrarily, and maliciously refused to receive and transport the oil or any part thereof, stating to appellee in a telegram dated August 27, 1932, that: "This waiver (the order of the Railroad Commission) does not release us of the necessity of securing affidavits from American Liberty Oil Company (the party from whom appellee purchased the oil) as to legal production of said oil source of same, etc. Therefore we cannot accept tender unless all these matters have been worked out to our complete satisfaction." Appellee alleged further that appellant's refusal to transport the oil is a mere pretense, in furtherance of a conspiracy entered into between it and certain larger oil companies engaged in purchasing oil, to damage and destroy appellee's business, as well as to destroy competition and the business of other small producers of oil; that in furtherance of said conspiracy, appellant intends to, and will in the future, refuse to take and transport other oils when tendered by appellee for such purpose; that by the refusal of appellant to transport said oil appellee will suffer irreparable damage, in that it has no storage for the oil; that the same is not suitably stored for preservation, is subject to the elements, liable to be destroyed, will evaporate, waste, and depreciate in gasolene content; that appellee is under contract to deliver same fresh and of a certain gravity test; that there exists no other practical or convenient means of transporting the oil to market; that appellee purchased the oil in good faith from the American Liberty Oil Company, believing the same had been lawfully produced, still so believes, does not know, nor has it at any time had any knowledge, of any illegality in its production or in its acquisition by the American Liberty Oil Company; and having acquired the oil July 2, 1932, prior to the promulgation of Commission Order No. 120, was not able to compel sellers from whom the oil was acquired to make the proof required by said order, hence was unable to

meet the demand of appellant until Order No. 120 was waived in its application to the 65,000 barrels in question. Appellee also seeks recovery of damages, actual and exemplary, prayed the issuance of a temporary injunction commanding appellant to receive and transport, in due course of business, all oil that may be tendered to it by appellant, and on final hearing that said injunction be made permanent, that it have judgment for its damages, penalties, and costs of suit, etc.

The court made the interlocutory order from which this appeal is prosecuted, commanding appellant "to desist and refrain from refusing to accept into your pipe lines for transportation the plaintiff's petroleum oil, consisting of 65,000 barrels, about 8,000 of which is in the storage known as the Burton Storage on the Della Lou Crim Farm in Rusk County, Texas, and the balance in tanks Nos. 1, 2 and 3 of the Tyler Pipe Line Company at Tyler and Overton, Texas, until the further order of this court, and you are hereby mandatorily commanded to take, accept and transport in due course of business as a common carrier, the plaintiff's said oil until the further order of this court." The above is a sufficient statement of the case for present purposes.

 Counsel for appellant say: "We can draw no distinction between the judgment of a court of law commanding, by writ of mandamus, the performance of an affirmative act, and the decree of a court of equity commanding by mandatory injunction, the performance of substantially the same act," and based upon this proposition, they argue that this is, in effect, a mandamus proceeding and that the writ is void, under authority of Cleveland v. Ward, 116 Tex. page 1, 285 S. W. 1063, because the same was issued ex parte and without notice. If it be true that this is simply the common-law action of mandamus, the writ, issued without notice, would be void because in contravention of article 2328, R. S. 1925, and further because violative of the due process of law provision of the Constitution; but is this, properly speaking, a mandamus proceeding? We think not.

It is quite true that mandamus is a proper and doubtless the usual remedy to compel a corporation to perform its legal duty to the public, yet mandamus is by no means an exclusive remedy, nor can it be correctly said that it is an adequate remedy in instances such as we are now considering, where, in order to restore and maintain the status quo, action and not rest is required, as rest in such instances is the element that inflicts the irreparable injury of which complaint is made. 32 C. J. pp. 24, 25, § (7)c. It is held even in jurisdictions maintaining separate law and equity courts that, for a legal remedy to be considered adequate, it must be "as practical and as efficient to the

ends of justice and its prompt administration as the remedy in equity" and "that where mandamus would not be sufficiently prompt, equity could proceed by injunction." The case under consideration is a fair illustration of a situation where promptness of relief is all-important, and where the necessary incidental delay to an action at law renders mandamus inadequate and futile to furnish the necessary relief. See Bourke v. Olcott Water Co., 84 Vt. 121, 78 A. 715, 716, 33 L. R. A. (N. S.) 1015, where, discussing this question, the Supreme Court of Vermont said: "Cases may easily be supposed in which promptness of relief would be all-important, and the delay incident to an application for mandamus would render that remedy utterly inadequate and useless. Take the case of a railroad company wrongfully refusing to furnish cars to one engaged in the business of shipping Christmas trees. Take the case of an irrigation company wrongfully refusing to supply a customer with water at a time when the whole crop was endangered. Take the case of an aqueduct company, bound by its charter to supply a municipality with water for fire protection, wrongfully cutting off the supply during an extremely dry time. Can it be said in such cases that mandamus affords a remedy as efficient to the prompt administration of justice, as that by mandatory injunction? Take this very case. The orators had no other source of water supply. Winter was shutting down upon them. The preliminary injunction was dated November 29th, and the earliest possible relief by mandamus could not be afforded before the following January term of this court. In the meantime the orators and their families were to remain without water. Mandamus afforded no adequate remedy. Equity alone was adequate to their necessities." We cannot assent to the proposition urged by appellant that this proceeding is to be assimilated to and disposed of under rules of law applicable alone to a mandamus proceeding, and appellant having the statutory right to move for dissolution of the writ, and for its suspension pending appeal, and waiving these privileges it cannot, in our opinion, be said that the issuance of the writ ex parte, and without notice, deprived appellant of due process of law in violation of the Constitution (article 1, § 19; Const. U. S. Amend. 14).

Insisting that as the proper function of a temporary writ, either mandatory or prohibitive, is to restore or preserve the status quo, appellant contends that the trial court erred in issuing the writ in question because its effect is to award in advance to appellee all relief it could obtain on final trial.

We have heretofore seen that the status quo in actions of this nature "is a condition not of rest but of action, and the condition of rest is what will inflict the irreparable injury complained of, in which circumstances courts of equity may issue mandatory writs before the case is heard on its merits." This doctrine has been proclaimed and applied in this as well as in other jurisdictions; in instances where it is made to appear that the complainant was entitled to a final mandatory injunction, a temporary writ similar in its scope and effect issued, although the temporary writ granted all the relief that could be obtained upon a final decree, and thus practically disposed of the whole case. See Jeff Chaison, etc., Co. v. McFaddin, 56 Tex. Civ. App. 611, 121 S. W. 716; M., K. & T. Ry. Co. v. Seeger (Tex. Civ. App.) 175 S. W. 713; Obets & Harris v. Speed (Tex. Civ. App.) 211 S. W. 316, 318; Oil Lease, etc., v. Beeler (Tex. Civ. App.) 217 S. W. 1054; City of Dallas v. McElroy (Tex. Civ. App.) 254 S. W. 599, 601; Bourke v. Olcott, 84 Vt. 121, 78 A. 715, 33 L. R. A. (N. S.) 1015; L. & N. R. R. Co. v. F. W. Cook Brewing Co., 223 U. S. 81, 32 S. Ct. 189, 56 L. Ed. 355; 32 C. J. page 25, § 7; 14 R. C. L. page 318, § 17. Excerpts in point quoted from a few of these authorities fully sustain the doctrine above announced. In Obets & Harris v. Speed, supra, page 318, of 211 S. W., the Court of Civil Appeals used this language: "Appellee contends that this is not a proper case for a temporary injunction, because to grant the same would be all the relief that could be obtained upon a final decree, and would practically dispose of the whole case. The principle invoked has no application to the present case. Under the authorities cited above the appellants were entitled to the injunction sought." In Oil Lease, etc., v. Beeler, supra, page 1058, of 217 S. W., the court said that: "It is contended that the decree of the court is too comprehensive, in that it in effect grants all the relief sought by the pleading, and all that could have been granted by the court on final hearing. The fact that the court granted all the relief sought is not, in our opinion, any ground for revising the decree, if the evidence and the rules of equity authorized it." In 32 C. J. pp. 25 and 26, § 7, the doctrine is stated that: "While it is generally true that the office of a preliminary injunction is to preserve the status quo until upon final hearing the court may grant full relief, and that this can be accomplished by an injunction prohibitory in form, it sometimes happens that the status quo is a condition not of rest but of action and the condition of rest is what will inflict the irreparable injury complained of, in which circumstances courts of equity may issue mandatory writs before the case is heard on its merits. Mandatory injunctions should rarely be granted except on final hearing and only where a plain and imperative case for active interference is shown, and then only to execute the judgment or decree of the court.

To authorize the issuance of a mandatory injunction in such case, the invasion of the right must be material and substantial; the right of complainant must be clear and unmistakable on the law and the facts; and there must exist an urgent and paramount necessity for the issuing of a writ in order to prevent extreme or other serious damage which would ensue from withholding it. If the issuance on preliminary application of an injunction mandatory in nature will have the effect of granting to the complainant all the relief that he could obtain upon a final hearing, the application should be refused except in very rare cases, and then only where complainant's right to the relief is clear and certain." The same doctrine is announced in 14 R. C. L. p. 318, § 16 as follows: "Where the complainant makes a case for a final mandatory injunction there seems to be no reason why a temporary injunction, similar in effect, may not issue, if the state of things brought about by the defendant's alleged wrongful acts will produce injury to the plaintiff. The case, however, should be a 'very strong and urgent one to induce the court to issue such a writ. A prospective injury must be clearly apparent for which the plaintiff will have no adequate remedy at law." Mandatory writs may issue at the suit of shippers against carriers, forbidding them to refuse to receive and transport, in due course of business, a commodity which, under the law, it is their duty to transport. 10 C. J. p. 69, § 60F; Crescent Liquor Co. v. Platt (C. C.) 148 F. 894, 903; Royal Brewing Co. v. M., K. & T. Ry. Co. (D. C.) 217 F. 146. A preliminary mandatory writ "will be granted when a serious probable right is threatened and a probable danger is shown" (Boynton v. Milmo (Tex. Civ. App.) 218 S. W. 510, 512), "in an extreme case when the right is clearly established and the invasion of the right results in serious injury," otherwise stated in the same case that the complainant must show "a strong and mischievous case of pressing necessity" (Cartwright v. Warren (Tex. Civ. App.) 177 S. W. 197, 199), "and when the issuance of such injunction would have the effect of granting all the relief that could be obtained by a final decree it should not be granted, except in cases of extreme hardship" (I. & G. N. Ry. Co. v. Anderson County (Tex. Civ. App.) 150 S. W. 239, 252); that such a writ should always be granted "with great caution and only when the necessity is great" (Joyce on Inj. § 97–a).

■ Do the facts of the instant case bring it within this well-established doctrine? We think so. The only reasonable excuse that could have been offered by appellant for its refusal to receive and transport the oil tendered by appellee was that the preliminary proof required by Commission Order No. 120 was not furnished when the oil was tendered; however, as this impediment was en-

tirely removed by the subsequent order of the commission, there remained no reasonable excuse justifying appellant's further refusal. Appellant had no private interest involved, except to safeguard itself against prosecution and penalization for a supposed violation of the statute and orders of the railroad commission in transporting the oil, but after the commission waived the application of Order No. 120, specifically authorizing pipe line carriers to transport this particular oil, appellant was without excuse for its refusal, for under the circumstances it would be unreasonable to assume that a prosecution for transporting the oil would ensue, or that a conviction could be sustained. See State v. Sugarland Railway Co. (Tex. Civ. App.) 163 S. W. 1047.

■ One of the questions that confronted the trial court was the balancing of equities between the parties. The rule is stated in 13 Standard Enc. of Pro. pp. 128, 130, that: "When the questions to be ultimately decided are serious and doubtful, the legal discretion of the judge should be influenced largely by the balance of equities between the parties. The court should ascertain which of them will suffer the greater detriment or inconvenience by its action. In fact, the balance of convenience or hardship is ordinarily a factor of controlling importance in cases of substantial doubt existing at the time of the granting or refusing of the preliminary injunction. * * *"

In the case of Jeff Chaison, etc., Co. v. McFaddin, 56 Tex. Civ. App. 611, 121 S. W. 716, 721, the Court of Civil Appeals, having occasion to discuss this principle, used the following language in point: "The damages to appellants from the granting of the temporary injunction, if wrongfully granted, are trivial and easily estimated and compensated. We quote from Joyce on Injunctions (volume 1, § 25): 'Where the rights of the parties are at all doubtful, the court applied to for an injunction should look at the balance of convenience, and act upon the consideration of the comparative inconvenience which may arise from granting or withholding the injunction. In this connection it is said in a recent case [Harriman v. Northern Securities Co. (C. C.) 132 F. 464, 475]: "In a doubtful case, where the granting of the injunction would, on the assumption that the defendant ultimately will prevail, cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant, through its refusal, the injunction usually should be denied. But where, in a doubtful case, the denial of the injunction would, on the assumption that the complainant ultimately will prevail, result in greater detriment to him than would, on the contrary assumption, be sustained by the defendant through its allowance, the injunction usually should be granted. The balance of conven-

ience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction. Such a doubt may relate either to the facts or to the law of the case, or to both."' And it has been held in this connection that damage to others, not parties to the suit, may be considered in a doubtful case."

Applying this doctrine to the facts of the instant case, it is not difficult to realize that if appellee is not to receive the protection afforded by the mandatory writ, it will suffer irreparable injury, for which no adequate relief can be found; on the other hand, the granting of the writ does not place appellant in jeopardy of prosecution or of conviction, does not visit upon it any loss whatever; on the contrary, by obedience to its mandate appellant will reap a distinct benefit in the collection of charges for transporting the oil.

We are of opinion that the trial court did not err in granting the writ, hence its judgment is in all things affirmed. Mr. Chief Justice JONES dissents.

Affirmed.

JONES, C. J. (dissenting).

Unable to agree to the conclusion of the majority of this court, that the trial court was warranted in decreeing to appellee full, complete, and final relief, as to the subject-matter of this appeal, on an ex parte hearing of which appellant had neither notice nor knowledge, I herewith enter my dissent and the reasons therefor.

It is not questioned that conditions may arise in which there may be presented to the trial court such an immediate and pressing necessity for relief, that would warrant the giving of full relief to the complaining party by means of a temporary injunction, either prohibitive or mandatory, even where the relief granted may be in fact all the relief that could be decreed on a trial of the case upon its merits. The authorities cited and commented upon in the majority opinion sustain such view. This court, speaking through the late Associate Justice Talbot, in the case of Cartwright v. Warren, 177 S. W. 197, 199, stated the general rule in this respect as follows: "An application for a preliminary mandatory injunction is required to show a clear right and a case of necessity or extreme hardship, and the court will seldom grant a mandatory injunction pendente lite unless the plaintiff's right is so clear that the denial of the right must be either captious or unconscionable." 32 C. J. p. 25 lays down the rule in reference to preliminary mandatory injunctions in this language: "The invasion of the right must be material and substantial; the right of complainant must be clear and unmistakable on the law and the facts; and there must exist an urgent and para-

mount necessity for the issuing of the writ in order to prevent extreme or other serious damage which would ensue from withholding it. If the issuance on preliminary application of an injunction mandatory in nature will have the effect of granting to the complainant all the relief that he could obtain upon a final hearing, the application should be refused except in very rare cases, and then only where complainant's right to the relief is clear and certain."

Do the facts alleged in appellee's petition bring appellee within the rule above announced? These facts show that appellee had purchased 65,000 barrels of crude petroleum oil, had stored it in tanks from which shipment could be made over appellant's pipe line to the destination named by appellee; that shipment of this oil was tendered to appellant on August 11, 1932, and declined for the reason that appellee had not complied with Railroad Commission Order No. 120, designed to show that the oil had been legally produced and legally acquired by appellee; that appellee claimed it was impossible for it to comply with said Order No. 120, for it had purchased the oil prior to the passage of such order by the railroad commission, and could not now compel the owner of the oil to furnish the required information; that it later secured a waiver of such order by the railroad commission as to the 65,000 barrels of oil, and again on August 26th tendered the oil to appellant for shipment; that shipment was again refused by appellant, in effect, on the ground that the waiver of such order by the railroad commission did not permit appellant to ship the oil, unless proof similar to that required by Order No. 120, as to the production and sale of this oil, was tendered to the pipe line company. Appellee refused to accede to this request and refused to make any proof as to the legal production of the oil, other than its statement that it bought the oil in good faith and honestly believed it to have been legally produced. Appellee also alleged, and it must be considered as a fact in this case, that its oil was subject to deterioration and to loss by evaporation in the storage tanks, that it had contracted to sell 25,000 barrels of the oil for August delivery, and would suffer damage by reason thereof, if an immediate shipment of the oil was not had.

The above facts constitute all the showing made by appellee as to its having a clear right to have the oil received and shipped in its pipe line by appellant, and also as to the extreme hardship it would suffer in the three or four days' time necessary to notify appellant, to appear and answer the application. This writer does not believe that the petition discloses any such condition as, under the rule of law above announced, or the rule of law stated by any decision, cited and relied upon in the majority opinion, warranted the drastic relief granted by the trial court.

The production, purchase, and transportation of petroleum oil is controlled by statute in this state, and the duty rests upon every producer of oil, on every purchaser of oil, and on the owner of every pipe line which transports oil, to comply with the law in this respect. The majority opinion apparently proceeds upon the theory that Railroad Commission Order No. 120 was the only impediment to the immediate shipment of the oil, and when this impediment was removed on August 25, 1932, by the waiver order of the railroad commission, no reason existed for a refusal to accept the 65,000 barrels for shipment. Such opinion overlooks the act of the First Called Session of the 42d Legislature, enacted to conserve the natural resources of this state, to prevent waste, and to authorize the proration of oil producing wells in the various oil fields of this state. One section of this act is chapter 26, page 46, of the General Laws of the First Called Session of the 42d Legislature, which became effective August 12, 1931 (Vernon's Ann. Civ. St. art. 6049c, § 14), prior to the production of this oil.

A section of this chapter provides: "The purchase, transportation or handling of crude petroleum oil or natural gas produced from any property in excess of the amount allowed by any statute or any rule, regulation or order of the [Railroad] Commission is hereby prohibited, and the Commission shall have power to enjoin any violation of this section." (section 14)

Chapter 28, p. 58, of the same Session of the 42d Legislature (Vernon's Ann. Civ. St. art. 6049a, § 1 et seq.), is also a part of the law, and section 8c of such chapter (Vernon's Ann. Civ. St. art. 6049a, § 8c) reads as follows: "No person, association of persons or corporation, whether a common carrier or otherwise, shall be permitted to transport crude oil or petroleum in this State, unless such crude oil or petroleum has been produced * * * or purchased in accordance with the laws of the State of Texas * * * or any order, rule or regulation of the Railroad Commission made in pursuance thereof."

"Sec. 9. The Railroad Commission of Texas shall have authority to make rules and regulations for the enforcement of the provisions of this Act." (Vernon's Ann. Civ. St. art. 6049a, § 9).

Section 11 of such chapter provides heavy penalties for the violation of any provision of this act. Section 11a provides penalties by way of forfeiture of charter of any domestic corporation violating such law.

In so far as this legislative enactment applies to appellant, it is prohibited from transporting any crude petroleum oil unless such oil was produced within the legally allowable production under the proration regulation of this state. In so far as such enactment applies to appellee, it is prohibited from purchasing crude petroleum oil unless the oil was likewise legally produced. Railroad Commission Order No. 120 added nothing to, nor took anything from, the effectiveness of this enactment. Such order manifestly was entered in obedience to section 9, above quoted, giving to the commission authority to make rules and regulations for the enforcement of the provisions of such enactment. Such order only prescribed the manner in which proof could be made that the petroleum oil was produced in accordance with the laws of this state, or a rule or regulation of the railroad commission in pursuance of such laws. The binding effect of this enactment on purchasers or shippers of crude petroleum oil is not conditioned on the railroad commission's having first promulgated rules or regulations for its enforcement. When the commission waived Order No. 120, it merely waived the manner of proof, such order required, to establish the fact that the oil had been legally produced or legally purchased.

When appellee accepted delivery of the 65,000 barrels of oil on its contract of purchase, it did so charged with the knowledge that the duty rested on it to require the seller to show that the oil had been legally produced. When appellee tendered the oil to appellant for transportation, it did so with the knowledge that such oil could not be accepted for transportation unless it made a proper showing that the oil had been legally produced and legally purchased. When, on August 26, 1932, appellant declined to accept the oil for shipment without evidence that same had been legally produced and legally purchased, it was doing no more than it was required to do under the provisions of this solemn legal enactment. If appellee is unable to make satisfactory proof as to the legality of the production of the oil tendered for shipment, it is solely to blame, for it was under the legal duty to require its seller to furnish such proof at the time it accepted the oil on its contract of purchase; and that notwithstanding Railroad Commission Order No. 120 had not been promulgated when the delivery of the oil was accepted.

This is not a case in which a court is authorized to balance the equities of the interested parties; for, until appellee complies with the law, by showing that the oil was legally produced and legally purchased, it can make no complaint that it is suffering damages by reason of the delay in shipment.

It necessarily follows, from what has been said, that, in the opinion of the writer, when the allegations in appellee's petition for a mandatory injunction are read in the light of the above-quoted statutes, there is no case made which would permit a court of equity to grant the relief awarded in this case, and that the trial court erred in entering the judgment.